**TEAL TRADING AND DEVELOPMENT, LP, Appellant**

v.

**CHAMPEE SPRINGS RANCHES PROPERTY OWNERS ASSOCIATION, Appellee**

No. 04-16-00063-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: July 5, 2017

APPELLANT ATTORNEY: Kimberly S. Keller, Keller Stolarczyk, PLLC, No. 120, Boerne, TX 78006-2805, Richard C. Mosty, Mosty Law Firm, 222 Sidney Baker St S Ste 400, Kerrville, TX 78028-5983, Charles Dixon Mosty, Mosty Law Firm, 222 Sidney Baker S Ste 400, Kerrville, TX 78028-5983.

APPELLEE ATTORNEY: Randall B. Richards, The Law Office of Randy Richards, PO Box 1319, Boerne, TX 78006-1319.

Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Marialyn Barnard, Justice

This appeal concerns the validity and enforceability of a property restriction—specifically a one-foot reserve strip ("the Non-Access Easement")—that if valid precludes ingress and egress across the strip. This court has previously reviewed this dispute, holding that neither side was entitled to summary judgment and remanding to the trial court for further proceedings. *See Teal Trading and Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n,* 432 S.W.3d 381, 384 (Tex. App.—San Antonio 2014, pet. denied). Upon remand, the trial court granted partial summary judgment in favor of appellee Champee Springs Ranches Property Owners Association ("Champee Springs"), and the remaining issues were tried to the court. After trial, the trial court ruled the Non-Access Easement was valid and awarded attorney's fees and costs to Champee Springs. On appeal, appellant Teal Trading and Development, LP ("Teal Trading") raises three issues challenging the trial court's partial summary judgment, its findings, and the award of attorney's fees and costs.[1] We affirm the trial court's judgment.

## BACKGROUND

As noted above, we previously reviewed this matter. *See id.* In our prior opinion, we provided a detailed rendition of the facts. Accordingly, we have taken portions of the factual background from our prior

---

1. We note that in its brief, Teal Trading refers to itself as Teal Trading and Development, Ltd. However, the final judgment uses the name Teal Trading and Development, LP. We shall refer to Teal Trading based on the nomenclature in the final judgment.

opinion and then revised, updated, and supplemented it as necessary. *See id.*

Teal Trading owns almost 2,000 contiguous acres of land in the Texas Hill Country. The majority of its property lies in Kerr County, Texas, although some portion of its land spills into neighboring Kendall County, Texas. Champee Springs represents residents of the Champee Springs Ranches subdivision and The Quarry at Champee Springs Ranches subdivision, which are located in Kendall County. *See* TEX. PROP. CODE ANN. § 204.004 (West 2014) (describing property owners' association).

Six hundred and sixty acres of Teal Trading's property, and some or all of the land now comprising the subdivisions represented by Champee Springs, were originally owned by E.J. Cop, who purchased 9,245.95 acres of land in Kendall and Kerr Counties on June 3, 1998. Cop platted and developed his property as Champee Springs Ranches. On June 4, 1998, Cop signed a "Declaration of Covenants, Conditions and Restrictions," which was recorded in the deed records of Kendall and Kerr Counties. *See* TEX. PROP. CODE ANN. § 202.001(1)(A) (defining dedicatory instruments, which includes restrictive covenants). The Declaration contains the restriction, i.e., Non-Access Easement, at issue. In pertinent part, the Declaration states:

DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
* * *

THAT WHEREAS, E.J. Cop, hereinafter called the Declarant, is the owner of all that certain 9245.95 acres, more or less, tract of land ("PROPERTY") located in Kendall and Kerr Counties, Texas as more particularly described on Exhibit "A" attached hereto and incorporated herein for all purposes.

WHEREAS, the Declarant will convey the PROPERTY, subject to certain pro-tective covenants, conditions, restrictions and easements as hereinafter set forth;

NOW, THEREFORE, it is hereby declared that all of the PROPERTY shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions, which are established for the purposes of creating and carrying out a uniform plan for the improvement, development and sale of the PROPERTY and for the further purpose of protecting the value attractiveness and desirability of the PROPERTY for the mutual benefit of the owners of same and accordingly shall run with the title to the PROPERTY or any part thereof and bind the Declarant, his heirs, successors and assigns and all owners and purchasers of the PROPERTY, or any part thereof, their, [sic] heirs, successors, executors, administrators and assigns.

* * *

2. There is hereby reserved unto Declarant a one (1) foot easement for precluding and prohibiting access to the PROPERTY or Ranger Creek Road or Turkey Knob Road by adjoining property owners other than Declarant and Declarant's express assigns. This easement is inside of and contiguous to the perimeter of the PROPERTY as described in exhibit "A" hereto, provided that no easement is reserved over, across or upon any public road right-of-way which is dedicated by and shown on that certain Plat of Champee Springs Ranches, a subdivision in Kendall and Kerr Counties, Texas, of record in Volume 3, Page 69, of the Plat Records of Kendall County, Texas, and further provided Tract 4 of said Champee Springs Ranches subdivision shall be entitled to one access entrance across the restrictive easement along the southwestern boundary line of said Tract 4, but none other access with-

out Declarant's express written consent thereto.

The restriction in paragraph two is the "Non-Access Easement." The parties appeared to agree on original submission to this court and still seem to agree the Non-Access Easement prohibits any person—aside from Cop or his assignees—who owns land along the original edge of the Cop tract from permitting anyone else access across the edge of their property.[2]

Ultimately, Cop began to sell lots from his property. The following is a summary of relevant events and conveyances in chronological order:

- June 3, 1998—E.J. Cop purchased 9,245.95 acres of land in Kendall and Kerr Counties.

- June 4, 1998—Cop signed the Declaration containing the Non-Access Easement.

- July 9, 1998—Cop sold 1,328 acres to C.R. Luigs.

- July 10, 1999—Luigs sold approximately 660 acres in Kerr County to Marrs and Marianne Bowman. The Bowmans platted the 660 acres as Privilege Creek Ranches, but did not sell any lots.

- July 29, 1999—Michael Wall, owner of 2,300 acres in Champee Springs Ranches, filed a replat, which decreased the size of the lots in Champee Springs Ranches and removed the Bowmans' 660 acres from Champee Springs Ranches.

- July 11, 2006—Mallard Royalty Partners [3] purchased the tract owned by the Bowmans, who executed separate deeds conveying their respective interests.

- July 12, 2006—Mallard Royalty Partners sold the 660 acres, and an additional 1,173 acres that had not been owned by Cop, to BTEX Ranch, LP.
- July 17, 2006—BTEX Ranch, LP executed a deed of trust covering all of its property—the 1,173 acre-tract and the 660 acre tract. BTEX attempted to develop its property as "Boerne Falls Ranch."
- November 12, 2009—Teal Trading acquired BTEX Ranch, LP's deed of trust and foreclosed on its interest.

We will refer to the 660-acre tract sold by Luigs and now owned by Teal Trading as the "Privilege Creek Tract." All of the deeds in the chain of title from Cop to Teal Trading state, in some form or another, that the property conveyed is "subject to" the restrictions in the Declaration filed by Cop.

When Cop acquired 9,245.95 acres, the portion of his property that would later be sold as the Privilege Creek Tract was at the northwestern end of his tract. Thus, the Non-Access Easement runs along the edge of the Privilege Creek Tract to the extent that the edge of the tract was also the edge of the original Cop tract. The additional 1,173 acres owned by Teal Trading adjacent to the Privilege Creek Tract were not part of Cop's original 9,245.95 acres. Accordingly, Teal Trading's additional acreage is seemingly "divided" from the Privilege Creek Tract by the Non-Access Easement. In contrast, although the Champee Springs Ranches subdivision is directly adjacent to the Privilege Creek Tract, it was not "divided" from the tract by the Non-Access Easement because the property comprising the subdivision was also part of Cop's original tract. This is

---

**2.** Champee Springs has analogized the non-access restriction to a wall surrounding a subdivision.

**3.** Mallard Royalty Partners, according to our prior opinion, appears to be an entity related to Teal Trading.

demonstrated by the following illustrative
map:

The area depicted in orange—also desig-
nated as "section 1"—is the 1,173 acres
owned by Teal Trading that was not part
of the original Cop Tract. The acreage in
yellow—also designated as "section 2"—is
the Privilege Creek Tract. The Non-Access
Easement, which is depicted by the bolded
red line,[4] "divides" the properties owned
by Teal Trading. The document shows how
the Champee Springs Ranches subdivision
is adjacent to the Privilege Creek Tract,

---

**4.** The red line showing the Non-Access Ease-
ment will appear in the Southwest Reporter
only as a bolded line.

but not "divided" from the tract by the Non-Access Easement.

After BTEX Ranch, LP acquired its property from Mallard Royalty Partners, it began to develop the entire property as a single, contiguous residential subdivision. It then built a construction road that connected Turkey Knob Road to Lane Valley Road. Turkey Knob Road is located within the Privilege Creek Tract and the Champee Springs subdivisions and gives those tracts access to Interstate 10, but it does not otherwise cross the "dividing line" created by the Non-Access Easement. Lane Valley Road is on the other side of the "dividing line" created by the Non-Access Easement. To enforce the Non-Access Easement, Champee Springs intervened in a lawsuit filed by Kendall County against BTEX Ranch, LP relating to BTEX Ranch LP's development. The trial court denied the intervention, but severed Champee Springs's claims into a separate lawsuit. During the BTEX Ranch, LP/Champee Springs litigation, Teal Trading foreclosed on BTEX Ranch LP's interest and intervened.

Champee Springs sought a declaratory judgment that BTEX Ranch, LP—and subsequently Teal Trading—was bound by the Non-Access Easement and estopped to deny its force, validity, and effect, and because Teal Trading was bound, the restriction was enforceable against it. Teal Trading denied it was bound by the restriction and sought a declaratory judgment that the Non-Access Easement was void as an unreasonable restraint against alienation and that Champee Springs waived the right to enforce the Non-Access Easement and was thus estopped from enforcing it. The parties filed competing motions for summary judgment. The sole ground raised in Champee Springs's motion was the "threshold" issue of whether Teal Trading was estopped by deed

from challenging the validity and enforceability of the Non-Access Easement. Teal Trading's motion and supplemental motion, on the other hand, raised several grounds for summary judgment: (1) the Non-Access Easement was an invalid easement; (2) members of the Champee Springs subdivision had waived enforcement of the Non-Access Easement; and (3) the Non-Access Easement was void as against public policy. Ultimately, the trial court granted summary judgment in favor of Champee Springs and denied Teal Trading's motion. After a hearing, the trial court awarded attorney's fees and costs to Champee Springs. Teal Trading perfected an appeal to this court.

On appeal, this court held Champee Springs failed to establish as a matter of law that Teal Trading was estopped by deed from challenging the Non-Access Easement's validity and enforceability because "none of the deeds within the chain of title from Cop to Teal Trading acknowledge the validity and enforceability of the non-access restriction." *Teal Trading*, 432 S.W.3d at 393. As to Teal Trading's motion, we held Teal Trading failed to prove as a matter of law that: (1) the Non-Access Easement was terminated by merger; (2) the signatories to the 1999 replat intended to waive enforcement of the Non-Access Easement; (3) the Non-Access Easement violates public policy; (4) the Non-Access Easement was an unreasonable restraint on alienation; and (5) the Non-Access Easement was an unreasonable restraint on use. *Id.* at 394–97. Finally, we reversed the trial court's award of attorney's fees to Champee Springs, holding that because we reversed the summary judgment in favor of Champee Springs, we were compelled to reverse the award of attorney's fees and allow reconsideration of the award after resolution on remand. *Id.* at 398 (citing TEX. PROP. CODE ANN. § 5.006(a) (stating that "In an action based on breach of a

restrictive covenant pertaining to real property, the court shall allow a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim.")). We remanded the matter to the trial court for further proceedings consistent with our opinion. *Id.*

On remand, Champee Springs—as a representative of its members—filed its Fourth Amended Original Petition. Therein, Champee Springs sought a declaration that the Non-Access Easement: (1) "is valid, binding on and enforceable against" BTEX Ranch, LP and Teal Trading, and (2) is enforceable as a covenant running with real property. Champee Springs also sought recovery of attorney's fees under section 5.006 of the Texas Property Code and section 37.009 of the Texas Civil Practice and Remedies Code, i.e., the Declaratory Judgment Act, as well as costs and interest. Teal Trading filed its Fifth Petition in Intervention. Teal Trading also sought a declaration, asking the court to declare the Non-Access Easement "void and unenforceable" because: (1) it violates the public policy of Kerr and Kendall counties; (2) Champee Springs members and other relevant land owners are estopped from contending the Non-Access Easement is valid; (3) Champee Springs members and other relevant land owners are on notice that the Non-Access Easement is not recognized; and (4) Champee Springs members and other relevant land owners waived enforcement of the Non-Access Easement is valid. Teal Trading also alleged several affirmative defenses—estoppel by deed, estoppel by record, and quasi-estoppel. It further alleged waiver, termination by merger, and void as an unreasonable restraint on alienation and as a prohibition on use.

After filing its amended petition, Champee Springs filed a partial no evidence summary judgment motion and a partial traditional summary judgment motion. In its no evidence motion, Champee Springs alleged, as to Teal Trading's affirmative defenses:

### *Waiver:*

(1) no evidence those who signed the 1999 replat unequivocally intended to waive the Non-Access Easement;

(2) no evidence the property owners affected by the Non-Access Easement signed the 1999 replat or otherwise intended to waive the Non-Access Easement;

(3) no evidence Cop signed the 1999 replat.

### *Estoppel:*

(1) no evidence of deception by those who signed the 1999 replat;

(2) no evidence those who signed the 1999 replat made any false representation or concealed any material fact.

### *Public Policy:*

(1) no evidence any subdivision regulations of Kendall and/or Kerr Counties, in effect at the time the Non-Access Easement was created, prohibited such a restriction;

(2) no evidence if any state or county public policy, in effect at the time the Non-Access Easement was created, prohibited such a restriction relative to access to private, gated subdivisions for purposes of emergency services;

(3) no evidence the Non-Access Easement prevented Kerr County from planning, specifying, and/or approving the road infrastructure of private roads within the Privilege Creek Ranches Subdivision;

(4) no evidence that on its face the Non-Access Easement, at the time it was created, violates any state or

federal constitutional or statutory provision.

### Unreasonable Restraint on Alienation:

(1) no evidence the Non-Access Easement restrains alienation of the Bowman Tracts or any part thereof, which are the only portions of Teal Trading's property burdened by the Non-Access Easement.

### Prohibition on Use:

(1) no evidence the Non-Access Easement so severely limits Teal Trading's property use that it rendered the property valueless.

### Termination by Merger:

(1) no evidence that all of the burdened and benefitted properties subject to the Non-Access Easement reverted back to ownership by a single entity.

In its traditional motion for summary judgment, Champee Springs also challenged each of Teal Trading's affirmative defenses and asserted the Non-Access Easement was a valid easement. Teal Trading filed a response and Champee Springs filed a reply to the response. After a hearing, the trial court granted Champee Springs's motion. In its partial summary judgment, the trial court specifically stated the grounds upon which the motion was granted, ruling as a matter of law that the Non-Access Easement:

- is not an unreasonable restraint on alienation;
- does not amount to a prohibition as to the use of Teal's property;
- was not terminated by merger; and
- is a valid easement.

The trial court specifically denied Champee Springs's motion as to Teal Trading's affirmative defenses of waiver and violation of public policy. The trial court did not rule on the affirmative defenses based on estoppel.

After the trial court granted partial summary judgment, the parties proceeded to a bench trial on the remaining issues, i.e., waiver, estoppel, and violation of public policy. In its judgment, the trial court declared the Non-Access Easement: (1) valid, binding, and enforceable against Teal Trading; and (2) enforceable as a covenant running with Teal Trading's property. The trial court rejected Teal Trading's remaining affirmative defenses, i.e., waiver, estoppel by deed, estoppel by record, quasi-estoppel, and violation of public policy. It awarded attorney's fees for the trial phase, contingent fees through a possible appeal to the supreme court, costs, and interest. Thereafter, Teal Trading perfected this appeal.

### ANALYSIS

On appeal, Teal Trading challenges the trial court's partial summary judgment in favor of Champee Springs, as well as the trial court's findings and conclusions following the bench trial. In addition, Teal Trading challenges the trial court's award of attorney's fees and costs to Champee Springs. We will address each challenge separately, beginning with the partial summary judgment.

### Partial Summary Judgment

As set out above, Champee Springs filed both no evidence and traditional motions for partial summary judgment challenging Teal Trading's affirmative defenses of waiver, estoppel, violation of public policy, unreasonable restraint on alienation, prohibition on use, and termination by merger. It also sought to disprove Teal Trading's allegation that the Non-Access Easement was not a valid easement. Although Champee Springs sought partial summary judgment as to all of Teal Trading's affirmative defenses, the trial court granted partial

summary judgment on only three of the asserted defenses—unreasonable restraint on alienation, prohibition on use, and termination by merger. The trial court also found as a matter of law that the Non-Access Easement is a valid easement.

Teal Trading begins its attack on the partial summary judgment by discussing the trial court's alleged misinterpretation and misapplication of the law of the case doctrine. Champee Springs counters, arguing the trial court did not misapply the doctrine. These arguments are based on the trial court's alleged application of this court's prior opinion in this matter. *See Teal Trading*, 432 S.W.3d at 388–97.

■ The law of the case doctrine provides that when a court of last resort makes a decision on a question of law, that decision governs the case in subsequent stages. *Loram Maint., Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006); *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006). The rationale for the doctrine is that it narrows the issues in successive stages of the litigation to achieve uniformity of decision as well as judicial economy and efficiency. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). The law of the case doctrine is based on public policy and is aimed at bringing finality to the litigation process. *Id.* The doctrine applies only to questions of law and does not apply to questions of fact. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986).

■ In *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, the First Court of Appeals discussed the application of the doctrine in situations similar to that before us—application of the doctrine in a subsequent appeal following a reversal and remand of a summary judgment due to the existence of fact issues. 317 S.W.3d 361, 370 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The court recognized that pursuant to the supreme court's decision in

*Briscoe*, a court of appeals is ordinarily bound by its initial decisions if there is a subsequent appeal in the original case— but only as to questions of law. *Id.* at 373 (citing *Briscoe*, 102 S.W.3d at 716). However, an initial decision does not absolutely bar reconsideration of an issue on a second appeal. *Id.* Rather, the application of the doctrine is within the court's discretion and depends on the circumstances of the case. *Id.* Moreover, the doctrine does not apply if the original decision was clearly erroneous. *Id.*

■ We hold that whether the trial court improperly used our prior opinion as a basis for it partial summary judgment is now irrelevant. This court will review the trial court's partial summary judgment as required pursuant to the applicable law and pertinent standard of review, applying the law of the case doctrine on appeal only as mandated by the Texas Supreme Court. In other words, if we rendered a decision on question of law in our prior opinion, we should treat such decision as law of the case unless it is clearly erroneous. *See Hudson*, 711 S.W.2d at 630; *Omni Metals, Inc.*, 317 S.W.3d at 393. However, given that our prior decision to reverse was based on the existence of summary judgment fact issues, and our ultimate resolution of this appeal, we hold the doctrine is inapplicable.

## Standard of Review

We review a trial court's decision to grant no evidence and traditional motions for summary judgment de novo. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Whether reviewing a traditional or no evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant and resolve any doubts in the

nonmovant's favor. *See Valence Operating*, 164 S.W.3d at 661; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

 Under Rule 166a(i) of the Texas Rules of Civil Procedure, a no evidence summary judgment is essentially a pretrial directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Tatsch v. Chrysler Grp., LLC and Infinity Cnty. Mut. Ins. Co.*, No. 04-13-00757-CV, 2014 WL 6808637, at *2 (Tex. App.—San Antonio Dec. 3, 2014, no pet. denied) (mem. op.). After an adequate time for discovery passes, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim. *See* TEX. R. CIV. P. 166a(i); *Tatsch*, 2014 WL 6808637, at *7; *All Am. Tel., Inc. v. USLD Commons.*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied). The moving party must specifically state the elements for which no evidence exists. TEX. R. CIV. P. 166a(i); *Timpte Indus.*, 286 S.W.3d at 310; *Tatsch*, 2014 WL 6808637, at *7. To raise a fact issue on the challenged elements, the nonmovant must produce more than a scintilla of evidence on the challenged elements. *DTND Sierra Invs., LLC v. Deutsche Bank Nat'l Trust Co.*, No. 04-12-00817-CV, 2013 WL 4483436, at *2 (Tex. App.—San Antonio Aug. 21, 2013, pet. denied) (mem. op.); *Martinez v. Leeds*, 218 S.W.3d 845, 848 (Tex. App.—El Paso 2007, pet. denied). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). The trial court must grant the no evidence motion if the nonmovant fails to bring forth more than a scintilla of summary judgment evidence to raise a genuine issue of material fact as to the challenged elements. TEX. R. CIV. P. 166a(i); *DTND Sierra Invs.*, 2013 WL 4483436, at *2; *Tatsch*, 2014 WL 6808637, at *2.

 Under Rule 166a(c) of the Texas Rules of Civil Procedure, a trial court properly grants a traditional motion for summary judgment when the movant establishes no genuine issue of material fact exists. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Rentfro v. Cavazos IV*, No. 04-10-00617-CV, 2012 WL 566364, at *7 (Tex. App.—San Antonio Feb. 15, 2012, pet. denied) (mem. op.). A movant meets this burden by either conclusively negating a single essential element of the plaintiff's cause of action or establishing an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *Rentfro*, 2012 WL 566364, at *7.

 When a party moves for summary judgment on both no evidence and traditional grounds, as Champee Springs did here, we first address the no evidence motion. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We address the no evidence motion first because if the nonmovant fails to bring forth more than a scintilla of summary judgment evidence to meet its burden as to the no evidence motion, then there is no need to analyze whether the movant satisfied its burden as to the traditional motion. *See Merriman*, 407 S.W.3d at 248. Accordingly, we will review Champee Springs's no evidence motion first. *See id.*

*Application*

*a. Unreasonable Restraint on Alienation*

Teal Trading claimed the Non-Access Easement was an unreasonable restraint on alienation. In its no evidence motion for summary judgment, Champee Springs asserted there is no evidence the Non-Access Easement: (1) is the type of restraint prohibited by the supreme court, or (2) restrains the alienation of the Privilege Creek Tract, which is the only portion of Teal Trading's property burdened by the Non-Access Easement. Teal Trading contends summary judgment as to this affirmative defense was improper. In support, Teal Trading argues it provided evidence establishing it owns property on each side of the Non-Access Easement and that if it is valid, it will be required to develop the Privilege Creek Tract (the 660 acres) in a manner that only provides access to the development via Turkey Knob Road in Kendall County even though the development is in Kerr County. According to Teal Trading, this limitation on access forces Kerr County service providers, e.g., fire, law enforcement, etc., to leave Kerr County and traverse a circuitous route to Turkey Knob Road in Kendall County to gain access to any development in the Privilege Creek Tract, a trip taking forty-five minutes to an hour. Teal Trading contends this evidence constitutes more than a scintilla of evidence of an unreasonable restraint on alienation.

To constitute an unreasonable restraint on alienation[5], it is axiomatic that a restraint must first exist. *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.2d 811, 813 (Tex. 1982). Only then must we determine whether the restraint is unreason-

able. *See id.* at 814–15; *see also Munson v. Milton*, 948 S.W.2d 813, 817 (Tex. App.—San Antonio 1997, pet. denied). The Restatement of Property, which Texas has adopted, defines the types of restraints on alienation:

(1) disabling restraint—attempt by an otherwise effective conveyance or contract to cause a later conveyance to be void;

(2) promissory restraint—attempt to cause a later conveyance to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey, and;

(3) forfeiture restraint—attempt to terminate or subject to termination all or part of the property interest conveyed.

*Sonny Arnold, Inc.*, 633 S.W.2d at 813 & n.2 (citing RESTATEMENT (FIRST) OF PROPERTY: § 404 (AM. LAW INST. 1944)); *Mattern v. Herzog*, 367 S.W.2d 312, 319 (Tex. 1963); *Teal Trading*, 432 S.W.3d at 396. To date, these are the only restraints on alienation recognized by the Texas courts. *See Teal Trading*, 432 S.W.3d at 396.

Although in its brief Teal Trading recognizes the three categories, it does not argue, nor did it present any evidence, that the Non-Access Easement falls within any of these categories. Teal Trading did not present any evidence the Non-Access Easement prevents it from transferring or in any way conveying all or part of the property, i.e., the Privilege Creek Tract, as a result of the Non-Access Easement. Moreover, we have reviewed the restriction and as we held in our prior opinion, it does not prohibit anyone, including Teal Trading, from selling any part of

---

5. A restraint on alienation is, in common vernacular, a limitation on the right to transfer or convey property or a property right. *See*

*Alienate*, BLACK'S LAW DICTIONARY 80 (8th ed. 2004).

the Privilege Creek Tract.[6] *Id.* Thus, on its face, the Non-Access Easement is not as a matter of law a restraint on alienation. *Id.*

▮▮▮▮▮ The evidence presented by Teal Trading shows, at best, an indirect restraint on alienation, i.e., the Non-Access Easement does not prevent Teal Trading from conveying any portion of the Privilege Creek Tract, but its existence may make potential buyers less eager due to inconvenience. *See Mattern,* 367 S.W.2d at 319–20. Although indirect restraints are recognized, the Texas Supreme Court has held that before such restraints are stricken, they must bear "some relationship to the evil which the rules governing undesirable restraints are designed to prevent." *Id.* at 320; *see* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 3.5 (AM. LAW INST. 1998); *see also Teal Trading,* 432 S.W.3d at 397. In section 3.5 of the Restatement (Third) of Property: Servitudes, the American Law Institute stated indirect restraints are valid unless they lack a rational justification. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 3.5. In addition, the supreme court has held we should not mechanically apply restraint on alienation rules to indirect restraints because it could inhibit the use of desirable contract provisions and unnecessarily limit the freedom to contract. *Mattern,* 367 S.W.2d at 320. Moreover, Teal Trading never asserted indirect restraint on alienation as a defense, nor did it present any evidence the creation of the Non-Access Easement lacked a rational justification. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 3.5.

Based on the law applicable to restraints on alienation and the evidence produced by Teal Trading, we hold Teal Trading failed to present even a scintilla of evidence that a recognized restraint on alienation existed. *See Sonny Arnold, Inc.,* 633 S.W.2d at 813 & n.2 (citing RESTATEMENT (FIRST) OF PROPERTY: § 404 (AM. LAW INST. 1944)). In other words, Teal Trading failed to present any evidence it was precluded in any way from conveying all or part of the Privilege Creek Tract because of the Non-Access Easement. Accordingly, we hold the trial court properly granted summary judgment in favor of Champee Springs as to the affirmative defense of restraint on alienation.

### b. *Prohibition on Use*

▮▮▮▮ Teal Trading also claims the Non-Access Easement is a prohibition on use of the Privilege Creek Tract so as to render the easement void. In its no evidence motion for summary judgment, Champee Springs asserted there is no evidence the Non-Access Easement so severely limits Teal Trading's use of the Privilege Creek Tract that it renders the tract "valueless." Based on the structure of the argument in its brief, it appears Teal Trading is relying on the same evidence to raise a fact issue on prohibition on use as it did for unreasonable restraint on alienation.

We recognized in our prior opinion in this matter that "[r]estrictions that amount to a prohibition of the use of property are void." *Teal Trading,* 432 S.W.3d at 397 (citing *Baker v. Henderson,* 137 Tex. 266, 153 S.W.2d 465, 471 (1941)). Teal Trading cites to *Baker* in support of its contention that the Non-Access Easement constitutes a prohibition on use, thereby rendering it void. As we did in our prior opinion, we disagree. As Teal Trading asserts, *Baker*

---

**6.** In construing a restrictive covenant, the covenant is to be strictly construed against the party seeking to enforce it *only if* the intent of the grantor is ambiguous or otherwise in doubt. *Munson,* 948 S.W.2d at 816.

Here, neither party argued ambiguity or doubt as to Cop's intent, nor do we find any. Thus, we construe the Non-Access Easement in favor of its validity. *See id.*

holds it is contrary to the "business policy" of the United States "to tie up real estate" where it is conveyed with restrictions and prohibition on use, and therefore, such restrictions should generally be resolved in favor of a free use of property and against such restrictions. 153 S.W.2d at 470. However, *Baker* is distinguishable from the current situation.

The restriction in *Baker* precluded the erection of any building on the property in question within seventy-five feet of the property line fronting any street adjoining such property. *Id.* at 469. Henderson, who purchased a lot subject to the restriction, sought to build a residence on his property. *Id.* Baker and others brought suit seeking to enjoin Henderson from building his residence, arguing that as the property was a corner lot, it would by necessity violate the seventy-five-foot restriction if any residence was constructed thereon. *Id.* On review, the supreme court held the restriction was ambiguous—whether the seventy-five-foot setback applied only to the street, which the lot in question fronted, or to any street along the lot—justifying a construction of the restriction in favor of the free use or property and against enforcement of the restriction. *Id.* After reviewing evidence regarding the grantor's intent with regard to the restriction, the court held it was doubtful it was intended to preclude the building of residences on lots such as the one purchased by Henderson. *Id.* at 470–71. The court then recognized a construction that prohibits the use of property is void, and in this case it was known Henderson purchased the land to build a residence. *Id.* at 471. The court held enforcing the restriction would be prohibit Henderson from building a residence, i.e., prohibit him from using the property as intended. *Id.* Thus, the property would be "rendered valueless and worthless" to Henderson. *Id.*

Here, as noted above, neither party alleged the restriction was ambiguous, nor do we find it so. Thus, we need not construe the Non-Access Easement "in favor of a free use of property" as argued by Teal Trading. *See id.* at 470; *see also Munson*, 948 S.W.2d at 816. Rather, we should construe the Non-Access Easement in favor of its validity. *See Munson*, 948 S.W.2d at 816. Teal Trading did not present any competent summary judgment evidence showing the Privilege Creek Tract would be "rendered valueless and worthless" if the Non-Access Easement is enforced. In fact, the summary judgment evidence produced by Champee Springs establishes portions of the Privilege Creek Tract have been sold for substantial sums of money. As we reasoned with regard to the unreasonable restraint on alienation defense, although the Non-Access Easement may make property within the Privilege Creek Tract less attractive to potential buyers, it does not prohibit Teal Trading from using the property as intended. Thus, we hold the portion of the trial court's summary judgment in favor of Champee Springs with regard to the affirmative defense of prohibition of use was proper.

■ Teal Trading contends it submitted competent summary judgment evidence establishing the property is valueless, but the evidence was improperly struck by the trial court based on an objection by Champee Springs. In its response to Champee Springs's assertion that there was no evidence the Non-Access Easement rendered Privilege Creek Tract valueless, Teal Trading submitted the affidavit of Robert W. Floyd, the Managing Partner for Teal Trading. In his affidavit, Mr. Floyd opined the Non-Access Easement negatively impacts the value of the Privilege Creek Tract due to the "lack of effective emergency services" and that in his

opinion, the Non-Access Easement renders the property valueless and unmarketable.

Champee Springs objected to the affidavit arguing, among other things, that: (1) Teal Trading failed to designate or disclose Mr. Floyd as an expert witness, (2) Mr. Floyd is not qualified or competent to express opinions about the market value of the property, and (3) his statements regarding the lack of value and marketability "are unsubstantiated factual conclusions and opinions that are not supported by any underlying facts." The trial court, by written order, sustained these objections. On appeal, Teal Trading argues only that the trial court erred in granting the objection to the affidavit "based on a lack of expert designation." Teal Trading argues that under the Property Owner Rule, the type of testimony provided by Mr. Floyd is "not the type of testimony that must be given by an expert" and that under Texas law, a property owner such as Mr. Floyd in his capacity as managing partner of Teal Trading, is qualified and permitted to testify about the value of his own property even if he is not an expert. *See, e.g., Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex. 2011); *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984).

 We agree that a property owner such as Mr. Floyd need not necessarily be designated or disclosed as an expert in order to testify about the value of his property. *See Reid Road Mun. Util. Dist.*, 337 S.W.3d at 852–53. Under the Property Owner Rule, a property owner is generally qualified to testify about the value of his property even if he is not an expert and would not be qualified to testify about the value of someone else's property. *Id.* The rule is based on the presumption that an owner is familiar with his property and its value. *Id.* The rule applies to testimony from a corporate entity's agent as well

because when an agent testified to the value of the entity's property, "the legal effect is that the actual owner of the property is testifying." *Id.* However, there are limits on who is permitted to testify on an entity's behalf under the Property Owner Rule because: (1) it could permit trial by ambush by allowing the circumvention of the means by which witnesses and their opinions are to be timely disclosed, e.g., discovery rules and scheduling orders; and (2) some corporate agents may have limited or no knowledge about specific company property and its value. *Id.* at 853–54. Thus, according to the supreme court, testimony regarding value of property is permitted "only from an officer in a management position with duties that at least in some part relate to the property at issue." *Id.* at 854. The court instructed that before permitting an agent to testify as to property value, courts should "look both to the position of the witness and to the substance of the witness's duties instead of looking only at the witness's title or status." *Id.*

 In *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012), the supreme court reiterated that although a property owner may testify as to the value of his property, such opinion testimony must be based on market value, not intrinsic or some other speculative value of the property. This burden is usually met by asking the property owner if he is familiar with the market value of the property. *Id.* at 155–56. If, however, the property owner's testimony is merely conclusory or speculative, it is insufficient. *See id.* at 158. There must be a factual basis for the property owner's valuation. *Id.* As recognized by the supreme court, numerous Texas courts have rejected testimony from property owners when it was unsupported by a sufficient factual basis. *See id.* at 158–59 (citations omitted).

 Thus, under the Property Owners Rule, it is not sufficient to simply aver personal knowledge and provide an opinion on valuation. *See id.* at 155–59. Rather, a property owner must provide the factual basis on which his opinion rests. *Id.* at 159. As stated by the supreme court:

> [P]roperty valuations may not be based solely on a property owner's *ipse dixit.* An owner may not simply echo the phrase "market value" and state a number to substantiate his diminished value claim; he must provide the factual basis on which his opinion rests. This burden is not onerous, particularly in light of the resources available today. Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support the claim. But the valuation must be substantiated; a naked assertion of "market value" is not enough. Of course, the owner's testimony may be challenged on cross-examination or refuted with independent evidence. But even if unchallenged, the testimony must support a verdict, and conclusory or speculative statements do not.

*Id.* at 159.

Here, Mr. Floyd stated only that his affidavit was based on personal knowledge. When he opined that the Non-Access Easement and the property burdened thereby were valueless, his opinion was nothing more than a conclusion, unsupported by any factual basis. Champee Springs specifically asserted Mr. Floyd's statements were "unsubstantiated factual conclusions and opinions that are not supported by any underlying facts." The trial

court agreed, as do we. Moreover, as noted above, this contention is belied by the fact that summary judgment evidence produced by Champee Springs shows property within the tract has been sold or offered for sale for substantial sums of money despite the existence of the Non-Access Easement. Accordingly, we reject Teal Trading's assertion that the trial court erred in sustaining the objection to the affidavit. As a result, Mr. Floyd's affidavit does not create a fact issue on either unreasonable restraint on alienation or prohibition of use.

### c. *Termination by Merger*

 Next, Teal Trading contends the trial court erred in granting Champee Springs's partial motion for summary judgment as to the affirmative defense of termination by merger. With regard to this affirmative defense, Teal Trading argues the Non-Access Easement was extinguished when it became the owner of the land on both sides of the easement and the easement property.[7] Champee Springs, in its motion for partial summary judgment, asserted there was no evidence "that all of the burdened and benefitted properties subject to the Non-Access Easement came back into the ownership of a single entity," as required for termination by merger.

The Restatement (Third) of Property defines a "restrictive covenant" as a "negative covenant" that limits permissible uses of land. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.3(3); *see* TEX. PROP. CODE ANN. § 202.001(4) (defining "restrictive covenant" as any covenant or restriction in dedicatory instrument whether mandatory, prohibitive, permissive, or administrative); *Voice of Cornerstone Church Corp. v. Piz-*

---

7. "The merger doctrine proceeds from a recognition that a person cannot have an easement in his or her own land because all the uses of an easement are fully comprehended in the general right of ownership." *ACI*

*Worldwide Corp. v. Churchill Lane Assocs., LLC,* 847 F.3d 571, 580 (8th Cir. 2017) (quoting *Will v. Gates,* 89 N.Y.2d 778, 658 N.Y.S.2d 900, 680 N.E.2d 1197, 1200 (1997)).

*za Prop. Partners*, 160 S.W.3d 657, (Tex. App.—Austin 2005, no pet.). A "negative easement," such as the one in this case, is a restrictive covenant. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.3(3). According to the Restatement, an easement is terminated "when all the benefits and burdens come into a single ownership." *Id.* § 7.5. For this reason, easements and other covenants in developments are rarely terminated by merger because each lot or parcel enjoys the benefit of the covenants imposed on every other property in the development. *Id.* cmt. C. Thus, merger arises so as to terminate an existing restriction or covenant "only when the entire development is acquired by a single owner." *Id.*

Teal Trading argues that because it owns the property on each side of the easement and the easement land as well, the estates merged and extinguished, i.e., terminated, the Non-Access Easement on its property. We disagree. In our prior opinion, we specifically held, based on section 7.5 and comment C thereto, merger by termination could only occur if *all* the burdened and benefitted properties came back into the ownership of a single entity. *Teal Trading*, 432 S.W.3d at 394 (emphasis added). Although Teal Trading proved it acquired much of the property originally dedicated by Cop, i.e., the property burdened by the Non-Access Easement, it did not produce any evidence that it acquired *all* of the property so burdened and benefitted. And, the record establishes portions of the original Cop property include properties still owned by members of Champee Springs. Thus, because Teal Trading failed to produce even a scintilla of evidence that "all the benefits and burdens" created in the original Cop dedication have "come

into a single ownership," there can be no termination by merger. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.5 & cmt. C; *see also Teal Trading*, 432 S.W.3d at 394. Accordingly, we hold the trial court did not err in granting the summary judgment in favor of Champee Springs as to the affirmative defense of termination by merger.

#### d. Validity of Non-Access Easement

▇▇▇▇ In its petition in intervention, Teal Trading generally sought a declaration that the Non-Access Easement was invalid and unenforceable. Champee Springs, in its traditional motion for summary judgment, alleged and argued that as a matter of law, the Non-Access Easement qualifies as a restrictive covenant and as such, is a valid easement. Based on our review of the motion for summary judgment, it appears Champee Springs believed Teal Trading was contending, as it had before, that the Non-Access Easement was invalid because easements must be based on the right to use property as opposed to a prohibition on use.[8] The trial court granted summary judgment on this ground.

▇▇▇▇ We have reviewed Teal Trading's response to Champee Springs' motion for summary judgment and find nothing therein in response to this portion of the motion for summary judgment. Thus, it appears that in its summary judgment response, Teal Trading did not respond to this ground in Champee Springs's motion for summary judgment. "[I]ssues a nonmovant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion[.]" *Escondido Res. II, LLC v. Justapor Ranch Co., LC*, No. 04-14-00905-

---

8. This is the contention Teal Trading asserted in the motion for summary judgment filed during the original suit, i.e., before remand.

CV, 2016 WL 2936411, at *2 (Tex. App.—San Antonio May 18, 2016, no pet.) (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)); *see* Tex. R. Civ. P. 166a(c). However, a motion for traditional summary judgment must stand or fall on its own merits, and a non-movant's failure to answer or respond cannot supply by default the summary-judgment proof necessary to establish the movant's right to judgment; the movant must still establish its entitlement to judgment as a matter of law. *McConnell*, 858 S.W.2d at 343 (Tex. 1993). The effect of a non-movant's failure to respond is that the non-movant is limited on appeal to arguing the legal sufficiency of the grounds presented by the movant. *Id.*

On page 29 of its appellate brief, Teal Trading recognizes the trial court granted summary judgment in favor of Champee Springs as to the three affirmative defenses and on the ground that the Non-Access Easement qualifies as a valid, restrictive covenant. Teal Trading also states it is appealing "these summary judgment rulings." However, nowhere in the portion of the brief challenging the trial court's partial summary judgment does Teal Trading provide any argument regarding the ruling that the Non-Access Easement is a valid easement except by challenging the rulings on the specific affirmative defenses. Thus, with regard to this ground, we hold Teal Trading has not presented anything for our review. *See Haire v. Nathan Watson Co.*, 221 S.W.3d 293, 301–02 (Tex. App.—Fort Worth 2007, no pet.) (holding that where defendant asserted in summary judgment motion that it had no duty to plaintiffs, plaintiffs' failure to challenge the no-duty argument on appeal required appellate court to affirm summary judgment as to negligence claim). However, even if we were to address the validity of the Non-Access Easement given its prohibitive nature, we would hold the trial court properly granted summary judgment.

Assuming Teal Trading's position is that the Non-Access Easement is invalid because it prohibited use—a negative easement—as opposed to granting a right to use, we hold this position is without merit. *See Teal Trading*, 432 S.W.3d at 394. As we recognized in our prior opinion in this matter, a claim that an easement is invalid because it purports to prohibit use as opposed to granting use "overlooks the well-established nature of negative reciprocal easements, restrictive covenants, or equitable servitudes restricting the use of property." *Id.* (citing *Evans v. Pollock*, 796 S.W.2d 465 (Tex. 1990); *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497 (1922); Restatement (Third) of Property: Servitudes § 1.3(3) ("A 'restrictive covenant' is a negative covenant that limits permissible uses of land. A 'negative easement' is a restrictive covenant.")). Texas law recognizes the use and enforcement of restrictive covenants, i.e., negative easements. *See, e.g.*, Tex. Prop. Code Ann. § 202.001(4) (defining restrictive covenant as any covenant or restriction whether prohibitive or permissive); *Moseley v. Arnold*, 486 S.W.3d 656, 662 (Tex. App.—Texarkana 2016, no pet.) (holding that any person entitled to benefit under terms of restrictive covenant may enforce it); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.) (same); *Voice of Cornerstone Church*, 160 S.W.3d at 665 (holding restrictive covenant is negative covenant that limits use of land and original grantor may enforce it). Accordingly, the trial court properly granted summary judgment on the ground that the Non-Access Easement is a valid, enforceable easement because such negative easements are recognized in Texas.

*e. Conclusion—Partial Summary Judgment*

Based on the foregoing, we conclude the trial court properly granted summary judgment in favor of Champee Springs with regard to Teal Trading's affirmative defenses of unreasonable restraint on alienation, prohibition on use, and termination by merger. We further hold the trial court properly granted summary judgment with regard to the validity of the Non-Access Easement as it relates to the claim of invalidity due to its negative nature. *See Merriman*, 407 S.W.3d at 248; *Ford Motor Co.*, 135 S.W.3d at 600; *Tatsch*, 2014 WL 6808637, at *6. Because Teal Trading has failed to bring forth even a scintilla of summary judgment evidence to counter the no evidence motion filed by Champee Springs with regard to the affirmative defenses of unreasonable restraint on alienation, prohibition on use, and termination by merger, it is not necessary to analyze whether it satisfied its burden in the traditional motion with regard to these defenses. *See Merriman*, 407 S.W.3d at 248.

With regard to the validity of the Non-Access Easement, we hold the trial court properly granted the traditional motion for summary judgment filed by Champee Springs. Teal Trading did not challenge this contention in its summary judgment response and has not presented any argument on appeal regarding the validity of the easement based on its prohibitory nature. Rather, in its brief with regard to the trial court's partial summary judgment, Teal Trading presents argument only as to the three affirmative defenses discussed above.

### Bench Trial

After granting partial summary judgment in favor of Champee Springs, the trial court proceeded to a bench trial on the remaining issues, i.e., whether the Non-Access Easement is invalid and unenforceable based on the affirmative defenses of estoppel, waiver, and/or violation of public policy. In its petition in intervention, Teal Trading alleged the Non-Access Easement violated Kerr County public policy, Champee Springs waived enforcement of the Non-Access Easement by virtue of the 1999 Replat, and Champee Springs is estopped, by virtue of the 1999 Replat, from contending the Non-Access Easement is valid and enforceable. In its judgment, the trial court found the Non-Access Easement valid and enforceable, rejecting Teal Trading's affirmative defenses. On appeal, Teal Trading asserts: (1) the 1999 Replat is binding, thereby rendering the Non-Access Easement invalid and unenforceable based the affirmative defenses of waiver and estoppel; and (2) the Non-Access Easement is void because it violates Kerr County public policy.

### Standard of Review

■ Teal Trading asserts it is challenging the sufficiency of the evidence supporting certain findings of fact and the conclusions therefrom, relating to the trial court's declaration regarding the validity of the Non-Access Easement and its rejection of Teal Trading's affirmative defenses. Before setting out the standard of review, we note that in its brief, Champee Springs contends we should reject Teal Trading's sufficiency challenges because it failed to set out the specific fact findings it contends are not supported by the evidence. Champee Springs argues Teal Trading merely argued the evidence as a whole is insufficient to support the trial court's findings, resulting in waiver.

■ "A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the evidence at specific findings of fact, rather than at the judgment as a whole." *Shaw v.*

*Cnty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied); *Levine v. Maverick Cnty. Water Control & Improvement Dist. No. 1*, 884 S.W.2d 790, 796 (Tex. App.—San Antonio 1994, writ denied). Nevertheless, a challenge to an unidentified finding of fact may be sufficient if the reviewing court—after giving consideration to the number of findings, the nature of the case, and the underlying elements of the applicable legal theories—can fairly determine from the argument the specific finding being challenged. *Shaw*, 251 S.W.3d at 169 (citing *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam) (holding points of error should be liberally construed to fairly and equitably adjudicate rights of litigants, and reviewing court should consider parties' arguments supporting each point of error and not merely wording of points)); *In re Estate of Bessire*, 399 S.W.3d 642, 649 (Tex. App.—Amarillo 2013, pet. denied).

Here, the trial court made more than forty findings of fact. Of those forty, approximately twenty-eight findings concern the validity of the Non-Access Easement and the affirmative defenses tried to the court. Although we agree Teal Trading failed to challenge specifically any particular fact finding, we hold that we can fairly ascertain the factual findings Teal Trading is challenging. Accordingly, we will review Teal Trading's arguments.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Villarreal v. Guerra*, 446 S.W.3d 404, 411 (Tex. App.—San Antonio 2014, pet. denied). However, when the appellate record includes a reporter's record, a trial court's findings of fact are not conclusive and are binding only if supported by the evidence. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). We re-

view a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Catalina*, 881 S.W.2d at 297; *Guerra*, 446 S.W.3d at 411. When reviewing the sufficiency of the evidence supporting a trial court's findings, "we do not serve as a fact finder, pass upon the credibility of witnesses, or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported." *Guerra*, 446 S.W.3d at 411 (quoting *Hausman v. Hausman*, 199 S.W.3d 38, 41 (Tex. App.—San Antonio 2006, no pet.)).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see Guerra*, 446 S.W.3d at 411. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827; *Guerra*, 446 S.W.3d at 411. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Guerra*, 446 S.W.3d at 411. In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Guerra*, 446 S.W.3d at 411. We set aside the judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Guerra*, 446 S.W.3d at 411.

A trial court's conclusions of law present legal questions that we review *de novo.*

BMC Software Belg., 83 S.W.3d at 794; In re Estate of Perez-Muzza, 446 S.W.3d 415, 418 (Tex. App.—San Antonio 2014, pet. denied). On appeal, we will uphold a conclusion of law if the judgment can be sustained on any legal theory supported by the evidence. Sheetz, 503 S.W.3d at 502; Perez-Muzza, 446 S.W.3d at 418.

### Application

#### a. Waiver, Estoppel by Deed, Estoppel by Record [9]

Teal Trading contends that because "[a]ll then owners of land in the Champee Springs subdivision signed and notarized" the 1999 Replat, Champee Springs waived its right to assert the validity of, and the right to enforce, the Non-Access Easement. On this same basis, Teal Trading argues Champee Springs is estopped by deed and record from asserting the validity of or enforcing the Non-Access Easement. Thus, as we recognized in our prior opinion in this matter, the defenses of waiver and estoppel are closely related in this case. See Teal Trading, 432 S.W.3d at 394 (noting issue was whether Champee Springs waived Non-Access Easement based on 1999 Replat and became estopped from enforcing it). Champee Springs argues Teal Trading is incorrect because although the 1999 Replat may have been signed by all those who owned land in Champee Springs in 1999, it was not signed by all of the property owners affected by the Non-Access Easement—specifically the Bowmans and Cop, which was mandatory to constitute waiver or to estop Champee Springs from asserting the validity and enforceability of the Non-Access Easement.

With regard to the affirmative defenses of waiver, estoppel by deed, and estoppel by record, and after reviewing the parties' arguments, the record, and the applicable law, we hold the relevant inquiry is whether it was necessary for all those affected by the Non-Access Easement to sign the 1999 Replat and if so, whether Teal Trading proved all those affected by the Non-Access Easement signed the 1999 Replat. This relates to the trial court's fact findings wherein the court found [10]:

> 20. All of the owners of properties affected by the Non-Access Easement did not sign the 199 Replat or agree to waive or release the Non-Access Easement;"
>
> 21. (a) Cop, who reserved the right to enforce the Non-Access Easement, did not sign the 1999 Replat ... [.]"

As set out in the "Background" portion above, in 1998, Cop purchased almost 10,000 acres of land in Kerr and Kendall Counties. Immediately after the purchase, Cop recorded the Non-Access Easement, which reserved to him a one-foot easement prohibiting access across the easement by anyone other than Cop or his assigns. Cop then platted his property as Champee Springs Ranches, eventually selling off

---

**9.** There is no dispute these defenses, as well as the defense of quasi-estoppel, are affirmative defenses. See Tex. R. Civ. P. 94; XTO Energy Inc. v. Nikolai, 357 S.W.3d 47, 55 (Tex. App.—Fort Worth, 2011, pet. denied) (holding estoppel by deed is affirmative defense); Stanley Works v. Wichita Falls Indep. Sch. Dist., 366 S.W.3d 816, 826 (Tex. App.—El Paso 2012, pet. denied) (holding quasi-estoppel is affirmative defense); Henke v. Fuller, No. 04-04-00409-CV, 2005 WL 954384, at *3 (Tex. App.—San Antonio Apr. 27, 2005, no pet.) (mem. op.) (holding waiver with regard to restrictive covenant is affirmative defense).

**10.** It is evident based on these findings and the trial court's ultimate rejection of Teal's affirmative defenses of waiver, estoppel by deed, and estoppel by record, that the trial court implicitly determined Teal Trading was required to prove all those affected by the Non-Access Easement signed the 1999 Replat.

large portions of it, including more than 1,300 acres to Luigs. In 1999, the Bowmans acquired 660 acres of the original Cop property from Luigs, i.e., the Privilege Creek Tract. A little over two weeks after the Bowmans acquired their portion of the original Cop tract, Dr. Michael Wall, who owned approximately 2,300 acres in Champee Springs Ranches—part of the original Cop tract located wholly within Kendall County, filed a replat, i.e., the 1999 Replat. He testified the purpose of the replat was to decrease the size of the lots within his acreage to make them easier to sell. The 1999 Replat also excluded the Privilege Creek Tract, which was owned by the Bowmans and located in Kerr County, from the subdivision known as Champee Springs Ranches. According to Teal Trading, the 1999 Replat was signed by "[a]ll then owners" of property within Champee Springs Ranches and the signatures were notarized. Subsequently, the 1999 Replat was approved by the Kerr County engineer and the commissioners. It was thereafter filed in the Kendall County property records. All of the deeds filed after 1999 reference the replat. We note the record shows Cop did not sell the remainder of his original tract until 2009.

The 1999 Replat included the following language:

RESERVE STRIPS/NON ACCESS EASEMENTS ARE NOT ALLOWED UNLESS THEY ARE DEDICATED TO THE COUNTY

Teal Trading contends this language waives and estops by deed and record any right Champee Springs might have to assert the validity and enforcement of the original Non-Access Easement. Champee Springs counters, arguing this contention is without merit because Teal Trading failed to establish the 1999 Replat, which seemingly purports to waive the 1998 Non-Access Easement created by Cop, was

signed by all those whose property was affected by the Non-Access Easement. Champee Springs asserts there could be no waiver or estoppel by deed or record in the absence of signatures of all property owners affected by the Non-Access Easement. We agree.

 Waiver is the intentional relinquishment of a known right or intentional conduct that is inconsistent with asserting that right. *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 111 (Tex. App.—San Antonio 2011, pet. denied); *Henke v. Fuller*, No. 04-04-00409-CV, 2005 WL 954384, at *3 (Tex. App.—San Antonio Apr. 27, 2005, no pet.) (mem. op.). Estoppel by deed and estoppel by record are defenses that preclude parties from taking positions contrary to those previously taken in prior documents. *See, e.g.*, *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 56 (Tex. App.—Fort Worth 2011, pet. denied) (holding estoppel by deed precludes parties from alleging title "in derogation of the deed [or] deny[ing] the truth of any material fact asserted in it.") (quoting *Surtees v. Hobson*, 4 S.W.2d 245, 246 (Tex. Civ. App.—El Paso 1928), aff'd 13 S.W.2d 345 (Tex. Comm'n App. 1929); *In re Estate of Loveless*, 64 S.W.3d 564, 578 n.4 (Tex. App.—Texarkana 2001, no pet.) (stating estoppel by record precludes party from denying truth of matter set forth in judicial or legislative record)). In essence, under both doctrines, parties and their privies are bound by recitals made in previously filed documents. *See, e.g.*, *Nikolai*, 357 S.W.3d at 56; *Loveless*, 64 S.W.3d at 578 n.4. Thus, those who intentionally waive a right or make assertions in a prior document—and those in privity with them—are generally bound by the waiver or previous assertions. But, are these legal tenets applicable to those who did not participate in the execution of the document that allegedly manifest the waiver or inconsistent position?

In *Zent v. Murrow*, 476 S.W.2d 875, 877 (Tex. Civ. App.—Austin 1972, no writ), the plaintiffs, owners of five residential lots subject to a restrictive covenant permitting only single family residences, brought suit to enjoin the defendants, owners of adjacent lots, from building duplex residences on their properties. The parties' deeds contained a restrictive covenant—the single-family-residence restriction. *Id.* The defendants had, prior to suit, sought to modify the restriction by filing a document purportedly signed by a majority of the owners who lived in a portion of the subdivision subsequent to the resubdivision. *Id.* at 878. After the plaintiffs brought suit, the defendant sought a second modification. *Id.* This second time, the defendants recorded an instrument, purportedly executed by a majority of the owners, that attempted to revoke the restrictive covenant. *Id.* The appellate court affirmed the imposition of the injunction, holding neither attempted modification was sufficient to revoke the restrictive covenant because any action taken to alter or revoke the restrictive covenant had to apply to all of the properties subject thereto. *Id.* at 878. The attempted modification did not apply to all the properties, and those owners did not sign either recorded document that attempted to modify the restrictive covenant. *See id.* In other words, lot owners in one section of the subdivision lacked authority to amend or revoke the restrictions of another section. *See id.* The holding in *Zent* has been recognized by numerous appellate courts in Texas as well as by courts in other jurisdictions. *See, e.g., Arthur M. Deck & Assocs. v. Crispin*, 888 S.W.2d 56, 61 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (recognizing rule announced in *Zent*, but factually distinguishing it); *Candlelight Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (applying *Zent* to preclude pooling of votes to determine whether there were sufficient percentages of votes required by restrictive covenant to pass increase in maintenance fund); *Bryant v. Lake Highlands Dev. Co. of Tex., Inc.*, 618 S.W.2d 921, 923 (Tex. Civ. App.—Fort Worth 1981, no writ) (recognizing rule announced in *Zent*, but factually distinguishing it); *see also, e.g., Maatta v. Dead River Campers, Inc.*, 263 Mich.App. 604, 689 N.W.2d 491 (2004); *Walton v. Jaskiewicz*, 317 Md. 264, 563 A.2d 382 (1989); *Ridge Park Home Owners v. Pena*, 88 N.M. 563, 544 P.2d 278 (1975); *Lakeshore Estates Recreation Area, Inc. v. Turner*, 481 S.W.2d 572 (Mo. Ct. App. 1972); *Riley v. Boyle*, 6 Ariz.App. 523, 434 P.2d 525 (1967).

 The reasoning of *Zent* compels this court to hold that when parties attempt to alter or revoke a restrictive covenant, such alteration or revocation is ineffective in the absence of agreement of all owners whose properties are affected by the restrictive covenant. *See id.* Here, according to Teal Trading, the 1999 Replat—which was executed by only a portion of those who owned property affected by the Non-Access Easement—subjects all properties affected by the Non-Access Easement to claims of waiver and estoppel despite the fact the owners of some affected properties did not sign the 1999 Replat. The holding that an attempt to modify or revoke a restrictive covenant only as to certain properties affected thereby is ineffective, strongly suggests an attempted modification or revocation is likewise ineffective without the consent of all affected property owners. *See Zent*, 476 S.W.2d at 878. If the law precludes property owners from deciding for other owners properties to which a restrictive covenant will apply, it must certainly preclude property owners from deciding for other owners that it will no longer apply to any of the affected properties. *See id.*

Moreover, we are not convinced that Teal Trading, as a non-party to the 1999 Replat, is entitled to invoke the defenses of waiver, estoppel by deed, or estoppel by record. In Texas, recorded documents may furnish evidence of recitals therein. However, it has long been the law in Texas that recorded documents are not competent evidence of such recitals as between a party to the document and a stranger thereto. *E.g.*, *Tex. Co. v. Lee*, 138 Tex. 167, 171, 157 S.W.2d 628, 631 (1941) (holding that recital in release that corporation changed name from Tidal Oil Company to Tidal Water Oil Company was insufficient to show or transfer of title of leasehold interest from Tidal Water Oil Company to Texas Company because Texas Company was stranger to release); *Teal Trading*, 432 S.W.3d at 388 (holding estoppel by deed cannot bind *or benefit* strangers to the deed); *but see Freeman v. Stephens Production Co.*, 171 S.W.3d 651, 655 (Tex. App.—Corpus Christi 2005, pet. denied) (holding that although party against whom estoppel is sought must be party or privy to instrument upon which estoppel is based, there is no corresponding requirement for party *invoking* estoppel). Thus, we hold Teal Trading cannot rely upon the recital in the 1999 Replat as a basis for asserting waiver or estoppel by deed or record.

The only case in which a Texas court has held that recitals in recorded instrument can be invoked by strangers to the recorded instrument is *Freeman. See* 171 S.W.3d at 655. This holding is contrary to the weight of Texas authority. *See, e.g., Lee*, 157 S.W.2d at 631; *Teal Trading*, 432 S.W.3d at 388. The *Freeman* court's error was specifically recognized by a federal district court, which stated, "the decision [in *Freeman*] does not . . . reflect the settled law of Texas." *Sloan ex rel. Juergens v. Urban Title Servs., Inc.*, No. 06 Civ. 1524 (CKK), 2011 WL 1137297, at *4 (D.D.C. Mar. 27, 2011). Accordingly, *Freeman* is not persuasive.

Based on the foregoing, we hold the trial court correctly determined that in order to sustain the affirmative defenses of waiver, estoppel by deed, and estoppel by record, Teal Trading had to prove that each property owner affected by the Non-Access Easement had to sign the 1999 Replat. After reviewing the evidence, we conclude Teal Trading failed to sustain its burden. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Guerra*, 446 S.W.3d at 411. At a minimum, there is no evidence or insufficient evidence the Bowmans—owners of the Privilege Creek Tract at the time of the 1999 Replat—signed it. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Guerra*, 446 S.W.3d at 411. Teal Trading's evidence merely showed that those who owned property in Champee Springs at the time of the replat signed the replat. Accordingly, the trial court's findings with regard to this issue are supported by sufficient evidence and its conclusion that Teal Trading failed to meet its burden of proof with regard to these affirmative defenses is proper.

### b. *Quasi-Estoppel*

In addition to asserting estoppel by deed and estoppel by record, Teal Trading also asserted the affirmative defense of quasi-estoppel. Quasi-estoppel is an affirmative defense that "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). Although it is akin to equitable estoppel, it requires neither proof of a false statement nor detrimental reliance. *Bank of Am., N.A., Prize Energy Res., L.P.*, 510 S.W.3d 497, 511–12 (Tex. App.—San Antonio 2014, pet. denied). To

establish this defense, Teal Trading had to prove: (1) Champee Springs (those who signed the 1999 Replat) acquiesced in or benefitted from a position inconsistent with its present position; (2) it would be unconscionable to allow Champee Springs to maintain its present position, which disadvantages Teal Trading; and (3) Champee Springs had knowledge of all material facts at the time it executed the 1999 Replat. *See id.*

■ The trial court concluded it was not unconscionable to allow Champee Springs to pursue enforcement of the Non-Access Easement, and that Teal Trading failed to meet its burden of proof with regard to quasi-estoppel. Although these findings are included under the trial court's "Conclusions of Law," they are more fairly characterized as findings of fact subject to a sufficiency challenge. Under Texas law, a trial court's designation of items as findings of fact or conclusions of law is not controlling on appeal, and as the reviewing court we may treat the designated items as factual findings or legal conclusions regardless of the label used. *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 640 (Tex. App.—Austin 2012, no pet.) (citing *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n. 1 (Tex. 1979); *Cities of Allen v. Railroad Comm'n of Tex.*, 309 S.W.3d 563, 570 (Tex. App.—Austin 2010), *aff'd in part, rev'd on other grounds sub. nom. Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156 (Tex. 2011)). Accordingly, we review these findings to determine if Teal Trading produced evidence establishing the required elements of quasi-estoppel.

We hold Teal Trading presented insufficient evidence to establish: (1) each person who signed the 1999 Replat had knowledge of all material facts, i.e., understood he or she was intentionally waiving the right to enforce the pre-existing Non-Access Ease-

ment; or (2) it would be unconscionable for all of the members to assert the validity and enforceability of the Non-Access Easement. *See id.*; *see also City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Guerra*, 446 S.W.3d at 411. The only evidence pointed to by Teal Trading with regard to these elements is based on testimony from Dr. Wall. Teal Trading argues the evidence establishes Dr. Wall initiated and benefitted from the 1999 Replat, his current position that the Non-Access Easement is enforceable is inconsistent with his signing of the replat, and thus, it would be unconscionable to enforce the Non-Access Easement. First, even if the evidence established these elements as to Dr. Wall, he was not the only Champee Springs member to sign the replat and Teal Trading did not provide any evidence relative to the elements of quasi-estoppel with regard to the others who signed the replat. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Guerra*, 446 S.W.3d at 411.

Moreover, as to Dr. Wall, we conclude the evidence does not establish he took inconsistent positions to his benefit or that it would be unconscionable to permit him to assert the validity of the Non-Access Easement. Nor does the evidence show—other than the fact that the language relied upon by Teal Trading appears in the replat—he had any knowledge that by signing the 1999 Replat, he would be waiving his rights relative to the enforceability of the Non-Access Easement. In other words, Teal Trading provided no evidence Dr. Wall had knowledge of a material fact.

Dr. Wall testified he did not believe signing the 1999 Replat would damage the right to enforce the Non-Access Easement. Dr. Wall testified he knew about the Non-Access Easement and that it "was an important selling point" to him when he purchased his property from Cop. Dr. Wall

testified the Non-Access Easement "enhanced the value of the property," and protected the value of property in Champee Springs "without a doubt." He further stated he did not believe he was waiving the Non-Access Easement by signing the 1999 Replat, pointing out the replat did not contain any language releasing or waiving any restrictive covenants applicable to Champee Springs Ranches. Dr. Wall said he never had any understanding that the purpose of the replat was to waive the Non-Access Easement. In fact, when he reviewed the language in the replat he asked about the reference to reserve strips and non-access easements and was advised it was of no concern. Dr. Wall testified he would not have signed the 1999 Replat if he had believed it would preclude him from asserting the validity and enforceability of the Non-Access Easement. Dr. Wall testified he did not interpret the language in the replat to mean he "was giving anything away, it was doing away with the non-access easement."

Accordingly, based on the evidence, Teal Trading failed to prove by legally or factually sufficient evidence that all those who signed the 1999 Replat benefitted from it based on inconsistent positions, that it would be unconscionable to permit those who signed to assert the validity of the Non-Access Easement, or that they had material knowledge that by signing the 1999 Replat, they were giving up the right to enforce the Non-Access Easement. See City of Keller, 168 S.W.3d at 827; Cain, 709 S.W.2d at 176; Guerra, 446 S.W.3d at 411. Teal Trading did not even prove that Dr. Wall was estopped based on the doctrine of quasi-estoppel as there is insufficient evidence to establish he took an inconsistent position such that allowing him to enforce the Non-Access Easement would be unconscionable given there is no evidence he knew the replat might be interpreted as a waiver of his rights under the pre-existing restrictive covenant. See City of Keller, 168 S.W.3d at 827; Cain, 709 S.W.2d at 176; Guerra, 446 S.W.3d at 411. Accordingly, we hold the trial court properly concluded Teal Trading failed to establish its defense of quasi-estoppel.

### c. Violation of Public Policy

Teal Trading also contends the trial court erred in refusing to conclude the Non-Access Easement was void because it violates public policy as established by Kerr County through two of its subdivision regulations. Those provisions provide:

S.02.A Street Layouts:

Adequate streets shall be provided by the sub divider, and the arrangement character extent with grade and location shall be considered in their relation to existing and planned streets, to topographical conditions to public safety and convenience and in their appropriate relationship to the proposed uses of land to be served by such streets. The street Layout shall be devised for the most advantageous development of the entire neighborhood.

S.02.B Relation to Adjoining Street System:

Where necessary to the neighborhood pattern, existing streets and adjoining areas shall be continued, and shall be at least as wide as such existing streets and in alignment therewith.

S.02.C Projection of Streets:

Where adjoining areas are not subdivided, the arrangement of streets in the subdivision shall make provision for the proper projection of such streets into such un-subdivided areas.

S.02.E Dead End Streets:

Dead end streets shall be prohibited except at dead stops to permit future expansion or when topographical conditions make them necessary

501 GENERAL.

5.01.A Provision for Future Subdivision:

If a tract is subdivided into parcels larger than ordinary building lots, such parcels shall be arranged to allow the opening of future road to comply with county's master road plan and traffic plan.

5.01.B Reserve Strips Prohibited:

There shall be no reserve strips controlling the only access to land dedicated or intended to be dedicated for public use.

5.02.A Road Layout:

Adequate roads shall be provided by the developer, and the arrangement, character, extent, with, grade and location of each shall be considered in their relation to existing and planned roads, to topographical conditions, to public safety and convenience, and in their appropriate relationship to the proposed use of land to be served by such roads. The road laid out shall be devised for the most advantageous development of the entire neighborhood, in compliance with the county's master road plan and traffic plan.

5.02.B Relation to Adjoining Road System:

Where necessary to the neighborhood pattern, existing roads in adjoining areas shall be continued, and shall at least be as wide as such existing roads and in alignment therewith.

5.02.C Projection of Roads:

Where adjoining areas not subdivided, the arrangement of roads in the subdivision shall make provision for the proper projection of roads into such unsubdivided areas

The first set of regulations control "street layouts" in subdivisions: (1) requiring adequate streets in relation to existing and planned streets, topographical conditions relating to public safety, convenience, and relationship to proposed land uses; (2) requiring provisions for proper projection of streets into un-subdivided areas; and (3)

generally prohibiting dead end streets. The second set of regulations set out above concern: (1) arrangement of parcels in subdivisions to permit future road in accordance with the county's master road and traffic plan; (2) prohibition of reserve strips "controlling the only access to land dedicated or intended to be dedicated for public use"; and (3) road layouts designed for the "most advantageous development" of the subdivision in compliance with the county's master road and traffic plan.

According to Teal Trading, these subdivision regulations set out Kerr County public policy with regard to reserve strips and non-access easements. Teal Trading points to the testimony of Kerr County Judge Tom Pollard, who stated the Non-Access Easement is inconsistent with the county's subdivision rules and regulations of any time period.[11] Judge Pollard testified the Kerr County public policy prohibits reserve strips and easements that prohibit the projection of roads or create dead end roads. The judge also testified the Non-Access Easement interferes with the county's ability to plan roads and would delay services to those within the Privilege Creek Tract if it is developed by Teal Trading. Thus, according to Teal Treading the trial court "was wrong to give no effect to the 1999 Replat's 'no reserve strip' clause" because it dovetails with Kerr County regulations.

Champee Springs contends Teal Trading's public policy argument is without merit because there is no authority establishing Kerr County elected officials are entitled to establish public policy in this regard, i.e., with regard to the creation and enforcement of reserve strips or non-access easements. Moreover, even if such officials are entitled to establish public policy in this regard, the evidence establishes the Non-Access Easement does not violate the regulations relied upon by Teal Trading, and therefore, does not violate public policy.

Champee Springs points to the evidence showing Kerr County commissioners approved by written order the plat filed by the Bowmans, i.e., the Privilege Creek Tract, in 2001; the commissioners also approved a revision of a plat for certain lots within the tract in 2008. Both plats show the only access to the Privilege Creek Tract was from Turkey Knob Road in Kendall County—just as it is now. The first plat was also approved by the Kerr County Engineer in 2001. He certified the plat conformed to Kerr County's subdivision regulations. In addition, the county's 911 director signed the plat, certifying it was consistent with public safety and the address guidelines for 911 service. The 911 director also certified the 2008 plat. Champee Springs produced a copy of the 1998 Kerr County subdivision regulations that stated a plat could not be filed in Kerr County unless all Kerr County regulations had been complied with in full. Judge Pollard admitted he was not a member of commissioner's court at the time the plats filed by the Bowmans were approved by the court. And, although Judge Pollard opined the Non-Access Easement violated Kerr County public policy as it existed at any point in time, he never explained why the commissioners (and the county engineer and 911 director) would have nevertheless approved the Bowman plats, in essence certifying compliance with the applicable Kerr County

11. Teal Trading points out that Judge Pollard also testified about Kendall County's policy regarding reserve strips and non-access easements, opining the Non-Access Easement also violates Kendall County public policy. In its brief, however, Teal Trading does not provide any argument regarding the Non-Access Easement's alleged violation of Kendall County public policy.

regulations. Judge Pollard also admitted it was within the commissioners' discretion to approve the plats. Finally, the evidence shows Kerr County had been on notice of Champee Springs's intent to enforce the Non-Access Easement since 2006, but never intervened in an attempt to enforce the regulations and policy Judge Pollard claimed it violated.

■■■ We must first decide whether a county, through its elected officials, has authority to establish public policy through regulations—such as those relied upon by Teal Trading—so as to render a violation of the policy void. The court declined to address this issue in its prior opinion in this case. *See Teal Trading*, 432 S.W.3d at 395 (assuming arguendo that property restriction created in violation of county's subdivision regulations may be void as against public policy).

■■■ Legislative enactments generally establish public policy. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 504 (Tex. 2015). Teal Trading, citing *Lopez*, points out "public policy is not solely established through legislative enactments." *See id.* However, Teal Trading failed to include the last part of the supreme court's statement. *See id.* The court completed its statement by noting that public policy *"may be informed"* by other rules and regulations. *Id.* (emphasis added). The supreme court did not hold that such rules and regulations could themselves establish public policy. *See id.* Moreover, the supreme court specifically recognized that where the Texas Legislature has addressed a matter, courts "are constrained to defer to that expression of public policy." *Id.* The court specifically held:

> Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

*Id.*

In *Lopez*, the court was asked to decide whether an attorney-client arbitration agreement was unenforceable as a violation of public policy because it violated the standards set out in the Texas Disciplinary Rules. *Id.* at 503–04. The court began its analysis of this issue by recognizing the broad freedom to contract under Texas law. *Id.* at 504. It then went on to recognize public policy is established by legislative enactments, but may be informed by rules and regulations. *Id.* The court then recognized that where the Legislature has addressed a matter, the court was bound to defer to the Legislature's expression of policy within the applicable statutory scheme. *Id.* As to the specific matter before the court, it noted the Legislature has addressed the enforceability of arbitration provisions, and thus, the court declined to impose as a matter of public policy, any legal requirements with regard to an attorney's duty with regard to such agreements. *Id.* The court concluded the arbitration agreement at issue was not unenforceable on the basis it violated public policy based on the Disciplinary Rules. *Id.* at 505.

Here, Teal Trading asks this court to hold a county's regulatory scheme relating to subdivisions within the county establishes public policy as it relates to the validity and enforceability of restrictive covenants. However, the Texas Legislature has specifically addressed the validity and enforcement of restrictive covenants in Title 11 of the Texas Property Code. *See generally* TEX. PROP. CODE ANN. §§ 201.001–215.018. Accordingly, just as the supreme

court in *Lopez* deferred to the Legislature's expression of policy within the applicable statutory scheme, we apply the same deference here. *See Lopez*, 467 S.W.3d at 504. Accordingly, we hold the trial court did not err in concluding the Non-Access Easement did not violate public policy based on Kerr County regulations. *See id.*

■ However, even if a county could set public policy in a situation such as the one presented here, we hold the trial court's findings relating to Kerr County public policy with regard to the validity and enforceability of the Non-Access Easement are supported by sufficient evidence, i.e., Teal Trading failed to establish there was no evidence or the evidence was against the great weight and preponderance of the evidence as to the relevant findings. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Guerra*, 446 S.W.3d at 411. As set out above, the trial court heard evidence that plats could not be filed in Kerr County unless they complied with all of the county's regulations. The commissioner's court approved at least two plats of the Privilege Creek Tract and these plats were approved by the county engineer, county 911 director, and the court. The plats showed the tract contained only private roads and was accessible only by way of Turkey Knob Road in Kendall County. Nevertheless, the plats were approved. Based on this evidence, the trial court could have found the Non-Access Easement did not violate Kerr County regulations, and thereby conclude there was no violation of public policy.

### d. Breach of the Non-Access Easement by Teal

■ The trial court found and concluded Teal Trading and its predecessor in interest, BTEX Ranch, LP, "breached or violated" the Non-Access Easement. Teal Trading argues we must reverse the judgment to the extent it finds Teal Trading

breached the Non-Access Easement—and any award of attorney's fees resulting from the alleged breach—because Champee Springs did not plead a cause of action for breach of a restrictive covenant. Teal Trading states that absent a proper pleading, it was error for the court to render a judgment based on an alleged breach and to rely on section 5.006 of the Texas Property Code as a basis for attorney's fees relating thereto. Teal Trading points out that under section 5.006 of the Property Code, a prevailing party is entitled to recover attorney's fees in an action based on the breach of a restrictive covenant pertaining to real property. *See* TEX. PROP. CODE ANN. § 5.006(a). Teal Trading contends that because Champee Springs asserted no claim that Teal Trading breached the Non-Access Easement, any judgment to that effect and any award of attorney's fees based thereon is erroneous. We disagree.

The trial court did not include in its judgment any mention of a breach of the Non-Access Easement and no damages were awarded based on such a breach. Moreover, by seeking a declaration under the Declaratory Judgment Act that the Non-Access Easement was valid and enforceable, we hold Champee Springs pled an action "based on the breach of a restrictive covenant" for purposes of section 5.006(a) of the Property Code. *See Rankin v. Covington Oaks Condo. Owners Ass'n, Inc.*, No. 04-04-00861-CV, 2005 WL 3161039, at * (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.).

In *Rankin*, condominium owners brought a declaratory against the condominium owners association after the association denied the owners permission to alter their units. 2005 WL 3161039, at *1. The owners sought a declaration as to whether the requested alterations were permitted under the restrictive covenants

included in the association's declaration and whether the association had the right to deny their request. *Id.* at *3. We held a declaratory judgment action was the proper vehicle for the owners' claims. *Id.* We further held that because the owners requested attorney's fees and prevailed on their suit for declaratory relief to enforce the restrictive covenants within the Declaration, they were entitled to attorney's fees under section 5.006(a). *Id.* at *6.

The procedural facts in this matter are similar to those in *Rankin*. Here, Champee Springs sought a declaration that the Non-Access Easement, a restrictive covenant, was valid and enforceable. It also sought recovery of attorney's fees, specifically under section 5.006(a) of the Property Code and section 37.009 of the Declaratory Judgment Act. Under *Rankin*, this is all that was required to support an award of attorney's fees under section 5.006(a). *See id.* Thus here, it was unnecessary for Champee Springs to allege, or for the trial court to find, an actual breach of the Non-Access Easement. *See id.* Accordingly, whether there was an actual breach of the Non-Access Easement is irrelevant for purposes of the judgment and the award of attorney's fees. *See id.*

However, in its live petition, Champee Springs claimed Teal Trading "refused to comply with" the Non-Access Easement. Thus, we hold Champee Springs in fact alleged a breach of a restrictive covenant. *See Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013) (holding that because Texas is notice pleading jurisdiction, petition is sufficient if it gives fair and adequate notice of fact upon which claims are based); *Attorney Gen. of Tex. v. Lavan*, 833 S.W.2d 952, 954 (Tex. 1992) (holding that in absence of special exceptions, court construes pleadings liberally in favor of pleader). And, Champee Springs presented some evidence of a breach of the Non-Access Easement by Teal Trading. The evidence shows BTEX Ranch, LP constructed a road in violation of the Non-Access Easement. Although Teal Trading did not build the road, Champee Springs produced evidence that since Teal Trading succeeded BTEX Ranch, LP, the road has been continually used. In fact, Floyd, Teal Trading's managing partner, admitted he had driven on the road that crosses the Non-Access Easement. Moreover, Floyd testified he assumes other have used the road as well. Accordingly, there is some evidence to support the trial court's finding that Teal Trading violated the Non-Access Easement.

## *Attorney's Fees & Costs*

In its Fourth Amended Original Petition, Champee Springs sought to recover attorney's fees under section 5.006 of the Texas Property Code and section 37.009 of the Declaratory Judgment Act. It also sought to recover its costs. The trial court awarded Champee Springs attorney's fees in the amount of $255,935.00 to be paid by Teal Trading. It also awarded Champee Springs all taxable court costs it incurred, but ordered such costs to be paid by Teal Trading and BTEX Ranch, LP jointly and severally. On appeal, Teal Trading contends that if this court sustains any of its substantive appellate issues, we should reverse the award of attorney's fees and costs to allow the trial court to reconsider the award of fees and costs. In addition, Teal Trading contends that even if this court does not reverse on any of the substantive issues presented, we should nevertheless reverse the award of costs, arguing trial court erred in ruling BTEX Ranch, LP and Teal Trading were jointly and severally liable for court costs incurred by Champee Springs.

*Standard of Review—Attorney's Fees*

 Recovery of attorney's fees by a prevailing party under section 5.006 of the Texas Property Code is mandatory. *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see* TEX. PROP. CODE ANN. § 5.006. Thus, whether a party is entitled to attorney's fees under section 5.006 is a question of law, and we review questions of law using a de novo standard. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (holding that availability of attorney's fees under particular statute is question of law).

 However, because an award of attorney's fees under the Declaratory Judgment Act is discretionary, an appellate court reviews such an award for an abuse of discretion. *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Orix Capital Markets, LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 48 (Tex. App.—San Antonio 2010, pet. denied). A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 706 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A trial court abuses its discretion if it misinterprets or misapplies the law or acts arbitrarily or unreasonably. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 69 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

*Application—Attorney's Fees*

 As noted above, section 5.006 of the Property Code provides that a prevailing party in an action based on the breach of a restrictive covenant pertaining to real property is entitled to recover reasonable attorney's fees. TEX. PROP. CODE ANN. § 5.006(a). "A prevailing party is the party to a suit that either successfully

prosecutes the action or defends against it, prevailing on the main issue. *Linden*, 222 S.W.3d at 696–97 (citing *Jakab v. Gran Villa Townhouses Homeowners' Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.); *FDIC v. Graham*, 882 S.W.2d 890, 900 (Tex. App.—Houston [14th Dist.] 1994, no writ)). In other words, a prevailing party is the one "vindicated by the judgment rendered." *Id.* (quoting *Jakab*, 149 S.W.3d at 867; *Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.—Austin 1995, writ denied)). Accordingly, with regard to an award under section 5.006, Teal Trading argues that should we reverse in its favor with regard to the Non-Access Easement, we would need to reverse the award of attorney's fees to allow the trial court to reconsider the issue after a resolution on remand. *See Teal Trading*, 432 S.W.3d at 398 (after reversing trial court's summary judgment in favor of Champee Springs, reversing award of attorney's fees to "enable the trial court to reconsider the fees after the cause is resolved on remand."); *see also Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 291–92 (Tex. App.—San Antonio 1999, pet. denied). We agree. However, because we are not reversing the trial court's judgment with regard to the Non-Access Easement, we need not reverse the award of attorney's fees. Teal Trading has not challenged the award of attorney's fees under section 5.006 in the event we affirm the trial court's judgment in favor of Champee Springs except as discussed above, and therefore, the award of attorney's fees stands.

 As to an award under section 37.009 of the Declaratory Judgment Act, that section provides that in any proceeding under the Declaratory Judgment Act, a trial court may award reasonable and necessary costs and attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM.

CODE ANN. § 37.009 (West 2015). The award of fees and costs under this provision is not dependent on a finding that a party "substantially prevailed." *Barshop*, 925 S.W.2d at 637. Rather, a trial court may award fees even to a non-prevailing party as long as they are equitable and just. *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 894 (Tex. App.—Dallas 2001, pet. denied). Nevertheless, the Texas Supreme Court and this court have held that in the event of a substantive reversal, remanding the issue of attorney's fees awarded pursuant to section 37.009 is appropriate. *See, e.g., Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005); *Hausser v. Cuellar*, 345 S.W.3d 462, 471 (Tex. App.—San Antonio 2011, pet. denied). As above, Teal Trading has not challenged the award of attorney's fees under section 37.009 of the Declaratory Judgment Act should this court affirm the trial court's judgment in favor of Champee Springs. Thus, the fees stand under section 37.009 as well.

### Standard of Review—Costs

■ Generally, whether a particular expense is permitted by statute or rule to be recovered as a cost is a question of law subject to de novo review. *CPM Trust v. City of Plano*, 461 S.W.3d 661, 674 (Tex. App.—Dallas 2015, no pet.); *Petrello v. Prucka*, 415 S.W.3d 420, 433 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011, pet. denied). However, the allocation of costs—the manner of assessing costs—is largely left to the trial court's discretion and cannot be overturned absent an abuse

of discretion. *CPM Trust*, 461 S.W.3d at 674; *Petrello*, 415 S.W.3d at 433; *Nolte v. Flournoy*, 348 S.W.3d 262, 270 (Tex. App.—Texarkana 2011, pet. denied). As noted above, a trial court does not abuse its discretion unless it misinterprets or misapplies the law or acts arbitrarily or unreasonable. *Feldman*, 436 S.W.3d at 69.

### Application—Costs

■ "Costs" usually refers to the fees and charges required by law to be paid to the courts or court officers in an amount fixed by statute or court rules. *Petrello*, 415 S.W.3d at 433; *Bundren*, 347 S.W.3d at 440.[12] As a rule, a party who is successful in the trial court is entitled to recover its costs from its adversary. TEX. R. CIV. P. 131; *CPM Trust*, 461 S.W.3d at 674; *Nolte*, 348 S.W.3d at 270. However, as with attorney's fees, a party need not be the prevailing party to recover costs under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Rather, an award of costs is left to the trial court's discretion.

■ Teal Trading's first argument is based on an assumed reversal of the trial court's judgment. Because we are not reversing, we need not address this contention. However, Teal Trading also argues that even we affirm the trial court's judgment in favor of Champee Springs, we should reverse the award of costs. Teal Trading argues the trial court abused its discretion in awarding costs against it and BTEX Ranch, LP jointly and severally rather than allocating costs as it did with regard to the award of attorney's fees. Teal Trading specifically contends the trial

---

12. Section 37.001(b) of the Texas Civil Practice and Remedies Code provides that a trial court may include the following in any in any order of judgment, all costs, including: (1) clerk and service fees due the county; (2) court reporter fees; (3) fees for masters, interpreters, and guardians ad litem appointed pursuant to the rules and statutes; and (4) other costs and fees permitted by the rules and statutes. TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(b).

court erred in holding it and BTEX Ranch, LP jointly and severally liable for Champee Springs's costs because in its live pleading, Champee Springs did not allege joint and several liability with regard to Teal Trading and BTEX Ranch, LP and any award of costs. Rather, Champee Springs merely alleged it be awarded "all costs of court" it incurred "in this cause."

In response, Champee Springs contends that under Rule 131, it is entitled to recover its costs entirely from Teal Trading or BTEX Ranch, LP as both were its unsuccessful adversaries below. Champee Springs notes that Rule 131 does not require an allocation of costs between unsuccessful parties, noting the rule plainly states that a successful party is entitled to recover all costs incurred from his or her adversary—Teal Trading and BTEX Ranch, LP were both Champee Springs's adversaries in this matter. *See* Tex. R. Civ. P. 131. Champee Springs points out the supreme court has held the underlying purpose of the rule is to ensure the prevailing party is unburdened by court costs and that such costs are paid by the losing adversary. *Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 378 (Tex. 2001). Thus, the trial court could have awarded all costs against Teal Trading or BTEX Ranch, LP as both were losing adversaries—which it did by holding them jointly and severally liable for costs.

Champee Springs also points out that a trial court may not award costs other than as provided in Rule 131 absent a finding of good cause, stated on the record. *See* Tex. R. Civ. P. 141. The record in this case does not include a finding of good cause for any deviation from the mandates of Rule 131.

In *Ruiz v. Guerra*, this court was asked to determine whether the trial court erred in assessing court costs solely against one of two plaintiffs as to the defendant. 293 S.W.3d 706, 723–24 (Tex. App.—San Anto-

nio 2009, no pet.). Although the procedural history of who sued whom in *Ruiz* is complicated, for our purposes it is sufficient to note that two plaintiffs—the Guerras and the Yorfinos—sued Sterling (among others) based on a traffic accident. *Id.* at 711. After a jury trial, the jury determined the plaintiffs should take nothing from Sterling, rendering Sterling the prevailing party at trial. *Id.* In its judgment, the trial court ordered only the Guerras to pay Sterling's court costs pursuant to Rule 131. *Id.* In conjunction with a direct appeal involving other parties to the litigation, the Guerras brought a cross-appeal challenging the trial court's award of costs to Sterling. *Id.* at 723.

The Guerras argued that pursuant to Rule 131, the Yorfino plaintiffs were also Sterling's adversaries, and as such, the payment of costs to Sterling should have been shared between the Guerras and the Yorfinos. *Id.* at 724. Sterling countered, arguing that only the Guerra family was Sterling's true adversary under Rule 131 because the Guerras were the only party to present evidence and argue that a defect in the truck designed by Sterling contributed to the accident. *Id.* In contrast, the Yorfinos, accordingly to Sterling, " 'meekly plead[ed] an alternative theory of recovery alleging Sterling's negligence,' " and did not present any evidence the truck was defective or Sterling was negligent. *Id.*

We began our review of this issue by noting that under the rule, Sterling was entitled to recover court costs from its adversary. *Id.* (citing Tex. R. Civ. P. 131). We then noted that in common usage, an "adversary" is " 'one that contends with, opposes, or resists.' " *Id.* (quoting Merriam-Webster's Ninth New Collegiate Dictionary 59 (9th ed. 1991)). We recognized that we had previously described an "adverse party" as one whose position at

trial and on appeal has been one of open hostility toward any judgment favorable to the successful party." *Id.* (citing *Hohenberger v. Schnitzer*, 235 S.W.2d 466, 469 (Tex. Civ. App.—San Antonio 1950, writ ref'd)). With these concepts in mind, we turned to the evidence and concluded that it was only the Guerra plaintiffs who actively sought to hold Sterling responsible for the accident; the Yorfino plaintiffs did not offer any evidence at trial suggesting Sterling was negligent and mentioned Sterling only once in its closing arguments. *Id.* at 725. Moreover, in opening statements, counsel for the Yorfinos specifically stated the Yorfinos were not going to be involved in the fight between the Guerra family and Sterling with regard to whether there was a defect in the truck manufactured by Sterling. *Id.* Based on the evidence, we held the Guerra plaintiffs were Sterling's only true adversary, and therefore, the trial court did not err in mandating that they alone pay Sterling's court costs pursuant to Rule 131. *Id.*

In this case, the record shows Teal Trading acquired all of BTEX Ranch, LP's interest in the subject property in 2009. According to its own original petition in intervention filed in March 2011, Teal Trading intervened as "successor in interest to BTEX Ranch, LP, by virtue of foreclosure. Intervenor has succeeded to all of the right, title and interest in and to the real property by virtue of the foreclosure proceedings." Moreover, in that same pleading, Teal Trading adopted and incorporated into its petition in intervention "all pleadings of its predecessor in title, BTEX Ranch, LP." Thereafter, there is nothing in the record to suggest any additional action by BTEX Ranch, LP with regard to the enforceability of the Non-Access Easement.

Based on our holding in *Ruiz* and our review of the record, Teal Trading, much like the Guerra plaintiffs, was—after 2009—the only party "whose position at trial and on appeal has been one of open hostility toward any judgment favorable to" Champee Springs. *See id.* at 724. As such, we hold the trial court was within its discretion to order Teal Trading to pay the entire amount of costs incurred by Champee Springs, which it did by ordering that Teal Trading and BTEX Ranch, LP bear the award of costs jointly and severally. *See Joint and Several Liability*, BLACK'S LAW DICTIONARY 933 (8th ed. 2004) (stating that under joint and several liability, each party is individually responsible for entire obligation). Thus, we overrule Teal Trading's issue regarding costs.

## CONCLUSION

Based on the foregoing, we overrule Teal Trading's issues and affirm the trial court's judgment.