

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00218-CV

**TROY M. FRANKS AND
EUDORA FRANKS,**

**Appellants/Appellees**

**v.**

**WESLEY RODERICK HOVEY
AND LINDA MARIE HOVEY,**

**Appellees/Appellants**

**From the 278th District Court
Leon County, Texas
Trial Court No. O-15-00143**

## MEMORANDUM OPINION

Appellants/Appellees Troy M. Franks and Eudora Franks ("the Franks") and Appellees/Appellants Wesley Roderick Hovey and Linda Marie Hovey ("the Hoveys") appeal the trial court's final judgment defining the parameters of an easement. We will affirm in part, reverse in part, and remand.

# Background

This case involves a dispute between neighbors over an easement. The trial court's uncontested definitions of the pertinent tracts of land are as follows:

**"76.35-acre tract"**: 76.35 acres of land described in a Warranty Deed with Vendor's Lien from Jack R. Hoogterp and Wanda K. Hoogterp Family Trust to Wesley Roderick Hovey and Linda Marie Hovey, dated April 11, 2014, and recorded in Volume 1593, page 915 of the Leon County Real Property Records.

**"37-acre tract"**: 37 acres of land described in a Correction Warranty Deed with Vendor's Lien from Nilah Lee Wieghat, individually and as Independent Executrix of the Estate of Melvin J. Wieghat, deceased, to Troy M. Franks and Dora Franks, dated August 10, 2000, and recorded in Volume 1061, page 18 of the Leon County Real Property Records.[1]

. . .

**"17-acre tract"**: 17 acres of the [sic] land described in a Warranty Deed with Vendor's Lien from Charles Black and Patricia Black to Troy M. Franks and Eudora Franks, dated March 28, 2002, and recorded in Volume 1108, page 628 of the Leon County Real Property Records.

**"Gravel Easement"**:[2] the easement defined in the Easement Deed from J.C. Hoogterp, et ux. to O.P. Tadlock, et ux., dated October 14, 1967, and recorded in Volume 346, Page 222, of the Leon County Real Property Records ("1967 Easement Deed").[3]

---

[1] The Wieghat deed additionally included a 5.014-acre tract that adjoins the 37-acre tract. This tract is not at issue. The combined acreage of 42.014 acres is noted on Plaintiff's Exhibit 3, the map attached to the trial court's judgment. On this map, the surveyor incorrectly notes the 17-acre tract as included in the 42.014 acres.

[2] The easement at issue in this case has also been called the gravel road, the gravel road easement, and the thirty-foot gravel road. We will use the trial court's definition for clarity.

[3] The record also reflects the existence of a separate "metes and bounds easement," defined in Exhibit B of the deed transferring the 17-acre tract to the Franks. Neither party has raised an issue with the trial court's findings or conclusions that relate to the "metes and bounds" or "thirty-foot" easement.

The majority of the underlying facts are not disputed. The Franks purchased the 37-acre tract from Wieghat in 2000 and purchased the adjoining 17-acre tract from the Blacks in 2002. The Hoveys purchased the 76.35-acre tract, which abuts both the 37-acre and 17-acre tracts, from the Hoogterp Family Trust in 2014.[4]

At the time the Franks purchased the 37-acre tract, an express easement existed that stretched from the western edge of that tract to County Road 450, traversing both the 17-acre tract and the 76.35-acre tract.[5] Sometime prior to the Hoveys' purchase of the 76.35-acre tract, the Franks improved the easement by covering it with gravel. At the time of the bench trial, the gravel road was approximately fourteen feet in width in places.

The Franks used the Gravel Easement for business and recreation without complaint from the Hoogterp family. At the time of trial, the Franks were residing on the 17-acre tract and operating a commercial trucking business. The Franks are also commercial beekeepers. Heavy trucks and eighteen wheelers related to both enterprises regularly use the Gravel Easement. The traffic from the trucks using the Gravel Easement was observed by the Hoveys prior to their purchase of the 76.35-acre tract. There is no evidence that the Franks' commercial enterprises caused damage to the easement or to the Hoveys' property.

---

[4] Individuals in the chain of title will be referred to collectively by their individual family surname.

[5] The Gravel Easement is depicted on the attached map that is modified from Appendix 9 to the Hoveys' Motion to Disregard Certain Findings of Fact and added to this opinion for clarity. The map includes a hand drawn depiction of the Gravel Easement where it crosses the 17-acre tract. The original surveyor's plat depicts the Gravel Easement only crossing the 76.35-acre tract. "North" is at the bottom of the plat.

The Hoveys installed fencing on both sides of the Gravel Easement where it crossed the 76.35-acre tract. The distance between the two fences is approximately thirty feet. The Hoveys also installed a sixteen-foot gate at the beginning of the Gravel Easement where it meets the county road. The Hoveys replaced the sixteen-foot gate with a thirty-two-foot double gate when the Franks complained. The Franks then filed suit for a declaration of their rights to the Gravel Easement and for an injunction preventing the Hoveys from gating the entry to the Gravel Easement. The Hoveys counter-sued, also seeking a declaration of their rights under the Gravel Easement. After a bench trial, the Hoveys raised additional legal issues regarding the parties' rights, asserting that the Franks could not put up a gate that obstructed the Gravel Easement even though the gate was at the entrance to the 17-acre tract owned by the Franks. The Hoveys additionally argued that their rights under the Gravel Easement allowed them to use the Gravel Easement where it crossed over the 17-acre tract.

In the Final Judgment, the trial court granted the Franks' claim for declaratory and injunctive relief, permanently enjoining the Hoveys from "erecting any gate, cattle guard, or other obstruction at the entrance of the 'gravel easement' where it meets County Road 450. . . ." The trial court further granted the Hoveys' request for injunctive relief, permanently enjoining the Franks from "erecting any structure or obstruction over the length of the platted easement as identified in the 1967 Easement Deed. . . ." The trial court additionally granted the Hoveys' counterclaim for declaratory relief by declaring in the judgment that the length of the "gravel easement" "is that described in the 1967 Easement Deed and the plat across the 76.35-acre and

42.105-acre[6] tract identified as trial Exhibit P-3." The trial court also denied the Hoveys' request for declaratory relief by declining to declare that the "gravel easement" was 14 feet in width or that the Franks' use overburdened the Gravel Easement. The trial court granted the Franks' request for attorney's fees in the amount of $11,800.00 incurred in the trial court, and conditionally awarded an additional $7,500.00 in the event of an appeal to the court of appeals and $5,000.00 in the event either party files a petition for review with the Texas Supreme Court.

### Trial Court Findings of Fact and Conclusions of Law

The trial court made the following pertinent findings of fact:

2.  The Gravel Easement is an express easement that runs with the land.

3.  The length of the Gravel Easement is that described in the 1967 Easement Deed.

4.  The length of the Gravel Easement is that described on the plat across the:

    76.35-acre tract as identified on trial Exhibit P-3.

5.  The course of the Gravel Easement over and across the 76.35-acre tract is where the "gravel road" is indicated on the Hovey survey admitted at trial as Exhibit P-3.

6.  The Gravel Easement exists for ingress and egress as outlined in the 1967 Easement Deed for the benefit of the Franks and their heirs, assigns, tenants, and guests.

7.  The Hoveys concede that the Franks have a right to use the Gravel Easement.

---

[6] This appears to be a typo as the acreage on Exhibit P-3 is 42.014 acres. This mistake, if that is what it is, does not impair our ability to review the issues raised by the parties.

8.  The Gravel Easement conveyed in the 1967 Easement Deed allows for "free and uninterrupted use of the same" and allows for improvements to the roadway and removal of obstructions and "that the same shall be free and uninterrupted."

9.  The language of conveyance of the Gravel Easement in the 1967 Easement Deed is unambiguous.

. . .

15. The Hoveys had actual notice of the existence of the Gravel Easement . . . as of the date of the April 11, 2014, Warranty Deed (with attached plat), by which the 76.35-acre tract was conveyed to the Hoveys.

16. The Hoveys had actual notice of the existence of the Gravel Easement . . . as of their receipt of their title policy dated April 8, 2014.

17. The title policy dated April 8, 2014, admitted as trial Exhibit P-10, excepts from coverage what it describes as "the 14' wide gravel road". . . .

18. The Court declines to find that the Gravel Easement is 14 feet in width.

19. There is no authority in any deed, grant, or conveyance to expand the width of the Gravel Easement beyond its present width and use.

20. The Court finds that the present width and use of the Gravel Easement is the width between the high fence lines running along each side of the gravel road an [sic] erected by the Hoveys.

21. The Court finds that the past and present use of the Gravel Easement does not overburden the easement as created.

22. The Franks have continually used and improved the Gravel Easement since their acquisition of the property in 2000 and 2002.

23.    Mr. Hovey's erection of a "high fence" on the Hoveys' property along each side of the Gravel Easement evidences his recognition of the Franks' right to use the easement.

. . .

25.    A gate was placed at the entrance of the Gravel Easement by the Hoveys on or about March 2, 2014.

. . .

28.    The Gravel Easement was in existence and use in 1976 when J.C. Hoogterp et ux. severed the 17-acre tract from a larger 98-acre tract and conveyed it to the Franks' predecessors in title.

29.    The evidence does support a reasonable inference that a right to use the gravel easement for ingress to and egress from the 17-acre tract was communicated by the original grantors of those tracts when they were severed from the larger 98-acre tract.

. . .

41.    A reasonable and customary attorney's fee for the Franks' attorneys in and around Leon County is $11,800 in the trial court, and additional attorney's fees of $7,500 for an appeal to the court of appeals, and $5,000 for a petition for review to the Texas Supreme Court.

The trial court made the following pertinent conclusions of law:

1.    The language of conveyance of the Gravel Easement in the 1967 Easement Deed is unambiguous.

2.    The grant of the easement in the 1967 Easement Deed prevents the construction by either party of a gate, cattle guard, or other obstruction at the entrance of the Gravel Easement based on the unambiguous language in the "four" corners of the grant/conveyance.

3.    The Franks are entitled to a permanent injunction against the Hoveys, prohibiting the Hoveys and their heirs, assigns, and future grantors [sic] from erecting any gate, cattle guard, or other

obstruction at the entrance of the Gravel Easement where it meets County Road 450 as shown on trial Exhibit P-3.

4. The Hoveys should be allowed to erect signage at the entrance of the Gravel Easement so as not to interfere with the Franks' vehicles entering or leaving the Hoveys' property.

5. The Hoveys are entitled to a permanent injunction against the Franks, prohibiting the Franks and their heirs, assigns, and future grantors [sic], from erecting any structure or obstruction over the length of the platted easement as identified in the 1967 Easement Deed and admitted as trial Exhibit P-3.

. . .

9. The Franks are entitled to recover $11,800 in attorney's fees, and additional attorney's fees of $7,500 for an appeal to the court of appeals, and $5,000 for a petition for review to the Texas Supreme Court.

10. The location and scope of the Gravel Easement has become fixed and certain by its use as a matter of law.

11. When the Franks acquired the 17-acre tract in 2002, the dominant estate interest in the gravel easement across the 17-acre tract for ingress to and egress from the 37-acre tract (which the Franks had previously acquired in 2000) did not merge with the Franks' interest in the servient 17-acre tract, terminating the express easement at the boundary line between the 17-acre tract and the 76.35 tract.

12. The Hoveys did acquire any easement rights in common with the Franks with regard to the 17-acre tract.

13. The portion of the gravel easement over the 17-acre tract has not terminated.

14. The Hoveys do have any right to use the gravel road across the 17-acre tract.

15. The Hoveys do have any right to enter and pass over the 17-acre tract.

16. The Hoveys do have any right to compel the Franks, or their heirs, assigns, or future grantees, not to construct, maintain, and close a gate across the gravel road where it enters the 17-acre tract.

17. The Hoveys did not plead a right to injunctive relief prohibiting the Franks, or their heirs, assigns, or future grantees, from erecting any structure or obstruction over the length of the platted easement, and that issue was tried by consent.

18. The Hoveys do have a right to place an archway or overhead gateway or other signage **over** the entrance to the Gravel Easement.

**Issues**

The Franks present the following issues:

Issue 1: Whether the Hoveys are entitled to declaratory or injunctive relief related to any portion of the gravel road that does not cross the Hoveys' land and, consequently, whether the Hoveys have a right to prohibit the Franks from erecting any structure or obstruction over the gravel road where it enters the 17-acre tract.

Sub-Issue 1(a): The Hoveys do not have standing to construe the status of the Gravel Easement across the Franks' property.

Sub-Issue 1(b): The trial court's grant of declaratory and injunctive relief in paragraphs 9(b) and 10 of the Final Judgment is not supported by their pleadings.

Sub-Issue 1(c): The Hoveys' post-trial claim to use the gravel road across the 17-acre tract or to otherwise enter the Franks' property was not tried by consent.

Sub-Issue 1(d); There was no evidence or, in the alternative, insufficient evidence to support the trial court's judgment and its findings of fact and conclusions of law reflected in paragraphs 9(b) and 10 of the Final Judgment.

Issue 2: Whether the trial court's award of attorney's fees should be remanded for reconsideration in light of this court's disposition of the appeal.

The Hoveys present the following issues:

Issue 1:    Whether the trial court erred in concluding that the Franks' use of the Gravel Easement does not overburden and impermissibly enlarge the scope of the easement in light of the following sub-issues:

a.    Whether the trial court erred in concluding that the Franks' use of the Gravel Easement to access the 17-acre tract does not overburden and impermissibly enlarge the scope of the easement, because the terms of the easement only allow its use to access the 37-acre tract.

b.    Whether the trial court erred in concluding that the use of the Gravel Easement by the Franks' truck drivers and other business-related customers do not overburden and impermissibly enlarge the scope of the easement, because the terms of the easement only allow for use by the Franks' "heirs, assigns, tenants, and guests."

Issue 2:    Whether the trial court erred in determining that the width of the Gravel Easement is the approximate 30-foot distance between the fencing on either side of the easement, as opposed to the 14-foot approximate width of the road.

Issue 3:    Whether the Franks failed to meet their burden to establish the existence of an easement by necessity, easement by implication/prior use, or easement by estoppel in light of the following sub issues:

a.    Whether the existence of other means of access to the 17-acre tract and 5.014-acre tract, respectively, precludes an easement by necessity and easements by implication/prior use.

b.    Whether the trial court's findings of fact and conclusions of law regarding easement by estoppel are insufficient and unsupported by the evidence.

Issue 4:    Whether the trial court's award of attorney's fees should be remanded for reconsideration in light of this court's disposition of the appeal.

**Standard of Review**

After a bench trial, we review a trial court's conclusions of law *de novo* and its

findings of fact for sufficiency of the evidence. *Hegar v. American Multi-Cinema, Inc.*, 605

S.W.3d 35, 40 (Tex. 2020). "We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "Under *de novo* review, the reviewing court exercises its own judgment and redetermines each legal issue." *Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 796 (Tex. App.—Waco 2005, pet. denied). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Westech Eng'g, Inc. v. Clearwater Constructors*, Inc., 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). "Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law." *Id.*

A trial court's findings of fact after a bench trial have the same weight and are judged by the same standards as a jury verdict. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). "The trial court's findings of fact are reviewable for legal (and factual) sufficiency of the evidence by the same standards as applied in reviewing the legal (and factual) sufficiency of the evidence supporting a jury's finding." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). When reviewing a factual sufficiency challenge, we consider all the evidence in the record and may set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

When the appellate record contains a reporter's record, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). If there is a conflict in the evidence, the trier of fact is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given to their testimony. *Eggemeyer v. Hughes*, 621 S.W.3d 883, 890 (Tex. App.—El Paso 2021, no pet.).

## Franks' Issue One

AUTHORITY

An easement is a non-possessory interest that allows its holder to use another's property for a stated purpose. *See State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). "An easement does not convey title to property." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007). An easement that grants a right of ingress and egress, like the one at issue in this appeal, allows the holder to traverse another's land to access his own property. *Clearpoint Crossing Prop. Owners Ass'n & Cullen's LLC v. Chambers*, 569 S.W.3d 195, 200 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)).

The easement in this case is an express easement appurtenant to the land. "An easement appurtenant benefits the property to which it is attached; it cannot be separated from the owner's rights in the land, and it passes with the property." *Cook v. Nissimov*, 580 S.W.3d 745, 751 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also First Nat'l Bank of Amarillo v. Amarillo Nat'l Bank*, 531 S.W.2d 905, 906 (Tex. App.—

Amarillo 1975, no writ) ("An easement appurtenant is an easement interest which attaches to the land and passes with it.").

"When construing the terms of an easement, courts deploy the rules of contract interpretation and look to the easement's express terms to determine its scope." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020); *see also Marcus Cable Assocs.*, 90 S.W.3d at 700-01. We examine and consider the entire writing" and harmonize its terms to give effect to all of the provisions." *Sw. Elec. Power Co.*, 595 S.W.3d at 686. "If the easement's terms are ascertainable and can be given legal effect, courts will not supplant the easement's express terms with additional terms nor consult extrinsic evidence to discern the easement's meaning." *Id*. at 689. When no one asserts that an express easement is ambiguous, as in this case, we review the trial court's interpretation *de novo. See DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *CenterPoint Energy Houston Elec. LLC v. Blubonnet Drive, Ltd.*, 264 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The mere fact that the parties disagree about the meaning of an express easement does not render the easement ambiguous. *DeWitt Cty.*, 1 S.W.3d at 100.

"A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed." *Cook*, 580 S.W.3d at 751. The words "exception" and "reservation" are often used interchangeably, but each has its own separate meaning. *Id*. at 752 (citing *Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911, 915 (Tex. App.—Beaumont 1934), *aff'd*, 126 Tex. 450, 86 S.W.2d 1077 (1935)). A reservation is the creation of a new right while

an exception does not pass title itself but operates to prevent the excepted interest from passing at all. *Id*.

"An owner who wishes to reserve a right or easement from conveying with the property must make such reservation by clear language." *Id*., 500 S.W.3d at 751-52. "[I]t is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved." *Id*., 500 S.W.3d at 752 (quoting *Cantley v. Gulf Prod. Co.*, 135 Tex. 339, 143 S.W.2d 912, 915 (1940)). In the absence of an express reservation of the 1967 Gravel Easement in the 1976 Black Deed, "we apply the *Cantley* presumption and determine that the deeds are reasonably susceptible to only one construction—*i.e.*, the construction that the express right to grant access to the easement was not reserved by [the grantor]." *Id*., at 752-53.

RELEVANT LANGUAGE FROM DEEDS

The 1967 Easement Deed. In the 1967 Easement Deed, the Hoogterps specifically "GRANTED, BARGAINED, SOLD, and CONVEYED" to the Tadlocks "their heirs and assigns, the free and uninterrupted USE, LIBERTY, PRIVILEGE, and EASEMENT of passing in, on, or across and over a set way across a certain tract of land [the then 98-acre-tract owned by the Hoogterps] in order that they may reach a certain 37 acre tract of land. . . ."[7] The 1967 Easement Deed noted that the "easement and right of way shall be over and across the most feasible and practicable route across said lands and

---

[7] The 98-acre tract included the Hoveys' 76.35 acres and the Franks' 17 acres before being divided, plus the 5.014-acre tract.

premises," and that the Tadlocks and "their heirs, assigns, and tenants," would have "free ingress, engress [sic], and regress" "by foot, by car, wagons, carriages, automobles [sic], and other vehicles, horses, mules or livestock, as by them shall be necessary or convenient at all times and seasons forever. . . ." The easement was also to be used in common with the Hoogterps and their "heirs and assigns and . . . tenants." The 1967 Easement Deed further provided:

> It is expressly stipulated, agreed and understood that the grantees herein, their heirs or assigns shall not be required to fence said right of way but that they may improve this same and grade the same and remove any obstructions thereon and that the same shall be free and uninterrupted.

The clear and unambiguous language of the 1967 Easement Deed provides access across the then 98-acre tract to allow the owner of the 37-acre tract to access the county road.

The 1976 Black Deed. The Hoogterps carved a 17-acre tract out of their 98-acre tract and sold it to the Blacks in 1976. The habendum clause notes that the transfer is made to the Grantee

> TO HAVE AND TO HOLD the above described lands and premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, their heirs and assigns forever, subject to the Vendor's Lien hereinafter reserved and retained, and subject to the exceptions and reservations, if any, above set forth.

The 17-acre tract was, therefore, conveyed with all "rights and appurtenances" including the Gravel Easement. The 1976 Black Deed does not contain any exceptions and reservations other than the specifically noted Vendor's Lien.

DISCUSSION

When the Hoogterps sold the 17-acre tract to the Blacks, the burden of the Gravel Easement where it crossed that 17-acre tract also transferred to the Blacks, who became the servient estate holders for that section of the Gravel Easement. The Hoogterps made no reservations of ownership in the 1976 Black Deed, thereby losing the right of access to the Gravel Easement where it crossed the 17-acre tract. The entire Gravel Easement remained, however, as a benefit to the 37-acre tract, allowing access across both the 17-acre tract and the 76.35-acre tract.

Because all interests in the Gravel Easement across the 17-acre tract were transferred by the Hoogterps to the Blacks, the reciprocal right to use the easement across the 17-acre tract did not pass to the Hoveys when they purchased the 76.35-acre tract. *See Farm & Ranch Inv'rs., Ltd. v. Titan Operating L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort Worth 2012, pet. denied) ("Deeds are construed to convey to the grantee the greatest estate possible.").

Even assuming the Hoogterps retained a right to use the Gravel Easement in the 1976 Black Deed, their right to use the Gravel Easement ceased when the Franks purchased the 17-acre tract as a result of the merger doctrine. *See Tirado v. Tirado*, 357 S.W.2d 468, 474 (Tex. App.—Texarkana 1962, writ dism'd) ("When appellee had acquired title to all the surrounding properties, this brought about an extinguishment of the servitude created by the easements for ingress and egress and the merger of the easements into the estate held by the appellee.").

> Under the merger doctrine, if an easement exists and then the owner of that easement acquires a greater estate, the two estates merge into the greater of the two and the lesser is extinguished. One who owns the fee

> simple title no longer needs an easement across his own property, since the fee simple gives him the right to use all of the property. The merger doctrine has been accepted by Texas courts. As stated by the Texas Supreme Court, "The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners; and when the owner of an estate enjoys an easement over another, and acquires title to the latter, the easement is thereby extinguished."

*Cecola v. Ruley*, 12 S.W.3d 848, 852 (Tex. App.—Texarkana 2000, no pet.) (footnotes and citations omitted).

"The merger doctrine proceeds from a recognition that a person cannot have an easement in his or her own land because all the uses of an easement are fully comprehended in the general right of ownership." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 578 n.7 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020) (quoting *ACI Worldwide Corp. v. Churchill Lane Assocs., LLC*, 847 F.3d 571, 580 (8th Cir. 2017)). "According to the RESTATEMENT [(THIRD) OF PROPERTY: SERVITUDES § 7.5], an easement is terminated 'when all the benefits and burdens come into a single ownership.'" *Teal Trading*, 534 S.W.3d at 579; *see also Green v. Richard D. Davis, L.L.P.*, 593 S.W.3d 842, 849 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("The party holding title does not need an easement as to his own property.").

> The principle is elementary that, to constitute an easement, the dominant and the servient estates must be held by different owners; and when the owner of an estate enjoys an easement over another, and acquires title to the latter, the easement is thereby extinguished.

*Howell v. Estes*, 71 Tex. 690, 693, 12 S.W. 62, 62 (Tex. 1888).

The trial court erred, therefore, as a matter of law in concluding that the Hoveys had the right to use the Gravel Easement across the 17-acre tract, in concluding that the length of the Gravel Easement extended across both the Hoveys' property and the 17-acre tract, and in enjoining the Franks from building a gate across the Gravel Easement where it entered the 17-acre tract.

We sustain the Franks' first issue.

### Hoveys' First Issue

The Hoveys argued post-trial that the Franks are placing an unreasonable burden on the easement because: (a) the 1967 Easement Deed permits access across the Hoveys' land only for the benefit of the 37-acre tract, not the 17-acre tract; and (b) the various truck drivers who traverse the Gravel Easement to reach the Franks' property are not "heirs, assigns, tenants, or guests."

ISSUE 1.a.

The Hoveys rely on *Storms v. Tuck*, 579 S.W.2d 447 (Tex. 1979), wherein the Supreme Court noted that a landowner could not use an easement to benefit a large tract even though the landowner had purchased a smaller tract that was connected to both the easement and the larger tract. The *Storms* court relied on the express terms of the written easement that granted access only to the smaller tract. The *Storms* court relied on *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex. 1966), which held:

> "Where, in connection with a transfer of property, an easement is granted for the benefit of that property over lands of the grantor, the easement is presumed to be appurtenant to the granted premises, and in the absence of words creating a more extended right the grantee or his successor in

interest is not entitled to use the easement for the benefit of other premises owned by himself or another."

*Storms*, 579 S.W.2d at 451.

*Bickler* and *Storms* are distinguishable from the present case as neither involved an easement that merged into the servient estate. These cases would apply if the Franks purchased property to the east of the 37-acre tract—the Franks could not use the Gravel Easement to access that property if it increased the burden on the servient estate. In *Bickler* and *Storms*, the additional property acquired was not the servient estate dominated by the easement. This is the inverse of the present, unique fact pattern. The additional property acquired by the owner of the tract to which the easement was appurtenant, the Franks, acquired part of the servient estate, property that was already crossed by the Gravel Easement. In this particular instance, however, the Franks did not acquire the entire servient estate. The Franks acquired property that was traversed by the easement, property that was already servient to the easement, which easement was appurtenant to his previously owned 37-acre tract. Moreover, the trial court expressly determined that the Franks' use of the Gravel Easement did not overburden the gravel easement which traversed the Hoveys' 76.35-acre tract.

Here, the Franks are merely traversing an easement that already exists on their own property to reach more of their property. Their crossing of the 17-acre tract to get to the 37-acre tract does not place a greater burden on the Hoveys' property interests. As the Franks note, "What the Hoveys seek is an injunction that would unreasonably compel the Franks to drive across the 17-acre tract to the 37-acre tract (which the

Hoveys do not contest their right to do), only to turn around and drive back to the 17-acre tract." "Common sense dictates a different result. . . ."

The trial court did not err in concluding that the Franks' use of the Gravel Easement to access the 17-acre tract does not overburden or impermissibly enlarge the scope of the easement.

ISSUE 1.b.

The law balances the rights of the parties to an easement by prohibiting the servient estate holder from interfering with the dominant estate holder's "use of an easement for the purpose for which it was granted or sought." *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 443 (Tex. App.—Fort Worth 2020, no pet.). "If a particular purpose is not provided for in the grant, the holder of the easement may not use the property for that purpose." *Id*. at 445.

Just as the servient estate cannot interfere with the right of the dominant estate to use an easement, the easement owner must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *see also Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 21, 2016, no pet.) ("[T]he easement owner must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate."). "[T]he threshold inquiry is not whether the proposed use results in a material burden, but whether the grant's terms authorize the proposed use." *Marcus Cable*, 90 S.W.3d at 703. "[E]asements are to be construed most

strongly against the grantor, and most favorably to the grantee, so as to confer the largest estate that a fair interpretation will permit." *Atmos Energy*, 598 S.W.3d at 462.

The Hoveys argue that no one may use the easement beyond "O.P. Tadlocks and wife, their heirs, assigns, tenants, and guests. . . ." The Hoveys' convoluted reading of the 1967 Easement Deed has no legal basis. The Franks are clearly the assigns of the Tadlocks, having purchased the 37-acre tract from the Wieghats who purchased it from the Tadlocks. There is no requirement that every individual who uses the easement be in the same category. The 1967 Easement Deed grants the dominant estate a right of way for ingress and egress "by foot, by car, wagons, carriages, automobles [sic], and other vehicles, horses, mules or livestock as by them shall be necessary and convenient." The clear meaning of the language of the deed is to allow free and uninterrupted access to those that the Franks have invited onto their property. Additionally, there is nothing in the 1967 Easement Deed that restricts the use of the easement to non-commercial vehicles.

The trial court did not err in concluding that the Franks' past and present use of the Gravel Easement does not overburden the easement as created and in denying the Hoveys' request for declaratory relief in that regard.

We overrule the Hoveys' first issue, including sub-issues a and b.

### Hoveys' Second Issue

The Hoveys argue that the trial court erred in finding that the width of the Gravel Easement is thirty feet rather than fourteen feet. As previously noted, the trial court specifically did not make a finding that the Gravel Easement was fourteen feet

wide, but rather that it was as described on Exhibit P-10 as "the 14' wide gravel road" and "that portion of subject property lying within a 30' wide road easement." The trial court found also that the present width and use of the Gravel Easement is the width between the fences erected by the Hoveys that run along each side of the gravel road. In its Judgment, however, the trial court declined to grant the Hoveys' request for declaratory relief as to the width of the easement, specifically noting:

> The Court declines to declare the dimension of the "gravel easement" as 14 feet in width; but further finds that there is no authority in any deed, grant, or conveyance to expand the width of the "gravel easement" beyond its present width and use.

AUTHORITY

The 1967 Easement Deed included no metes and bounds description of the Gravel Easement. "[C]ourts have long been reluctant to write fixed widths into easements when the parties to the easements never agreed to a particular width." *Sw. Elec. Power Co.*, 595 S.W.3d at 689. When an instrument granting an easement does not specify the easement's width, the courts may imply that the width is whatever is "reasonably necessary and convenient" for ingress and egress while being as "little burdensome as possible to the servient owner." *Coleman*, 514 S.W.2d at 903. "The use of a general easement without a fixed width is a strategic decision that does not render an easement ambiguous or require a court to supply the missing term." *Sw. Elec. Power Co.*, 595 S.W.3d at 690. "Because landowners purchase properties aware of any encumbrances, and easements are a common encumbrance, landowners are charged

with notice of easements that may encumber their property, including easements that do not contain a specific width but instead include general language." *Id.*

If the easement is unambiguous, parol evidence is inadmissible to contradict or vary the meaning of its explicit language. *Atmos Energy*, 598 S.W.3d at 463; *see also Sw. Elec. Power Co.*, 595 S.W.3d at 689 ("[T]he lack of a specified width in an easement does not mandate the admission of extrinsic evidence to prescribe a width—doing so obviates the flexibility that general easements afford the parties who bargained for the terms of an express general easement."). "Additionally, when a contract is unambiguous, we may not consider the parties' course of performance to determine the contract's meaning." *Atmos Energy*, 598 S.W.3d at 463.

DISCUSSION

There is nothing in the record to reflect that the width of the Gravel Easement was ever limited to fourteen feet, which is the width of the gravel road installed by the Franks, or that it was ever limited to or exceeded thirty feet, which is the distance between the fences installed by the Hoveys. The trial court's findings regarding the width of the Gravel Easement are both legally and factually sufficient and fully supported by the record.

We overrule the Hoveys' second issue.

**Franks' Second Issue; Hoveys' Fourth Issue**

Both parties request that, if they are successful on appeal, the case be remanded to the trial court for reconsideration of the issue of attorney's fees. As we are

remanding the case to the trial court, we sustain the Franks' second issue and overrule the Hoveys' fourth issue.

## Conclusion

In light of the foregoing, we sustain the Franks' first and second issues and overrule the Hoveys' first, second, and fourth issues. We need not address the Hoveys' third issue as the Franks did not appeal the matters raised in this issue.

Accordingly, we affirm the trial court's judgment in part and reverse the trial court's judgment in part and remand the case for further consideration in light of this opinion.


MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed in part; reversed in part; remanded
Opinion delivered and filed February 9, 2022
[CV06]



